# Stratton, Appellant, *v.* Allegheny County.

*Constitutional law—Constitution of Pennsylvania—Article III, Sections 7 and 20—Act of April 18, 1913, P. L. 96—Classification of cities and counties.*

1. The Act of April 18, 1913, P. L. 96, authorizing cities and counties wherein the county seat is within the limits of a city, to erect joint county and municipal buildings, is a general law and does not violate Article III, Section 7, of the Constitution, which provides that "the general assembly shall not pass any local or special law......regulating the affairs of counties, cities......nor shall any law be passed granting powers or privileges in any case where the granting of such powers and privileges shall have been provided for by general law, or where the courts have jurisdiction to grant the same or give the relief asked for," nor does it violate Article III, Section 20, of the Constitution, which provides that the general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement.

*Municipalities—Contracts—Employment of architects—Increase of indebtedness.*

2. The provisions of the statutes requiring that contracts relating to city affairs shall be let after advertisement to the lowest responsible bidder, do not apply in the making of contracts for the

employment of attorneys, physicians, engineers or others, involving professional skill. They do not, therefore, apply to a contract by a city for the employment of an architect for the erection of a building, as an architect's services involve professional skill, knowledge and judgment.

3. Where a city has raised money by a bond issue for the construction of a municipal building, the making of a contract for the erection of such building cannot be construed as a further increase of indebtedness, where it does not appear that the money in hand will not be sufficient to answer all obligations imposed by the contract.

Argued April 20, 1914. Appeal, No. 86, Oct. T., 1914, by plaintiff, from decree of C. P. Allegheny Co., Oct. T., 1913, No. 1981, in equity, refusing an injunction, in case of E. L. Stratton v. The County of Allegheny and The City of Pittsburgh and I. K. Campbell, J. Denny O'Neil and S. J. Toole, Commissioners of the County of Allegheny; William A. Magee, Mayor of said City of Pittsburgh, and E. S. Morrow, Controller, and John M. Goehring, E. V. Babcock, Robert Garland, William A. Hoeveler, J. P. Kerr, P. J. McArdle, Enoch Rauh, W. G. Wilkins and S. S. Woodburn, Councilmen of said City of Pittsburgh. Before Fell, C. J., Brown, Potter, Elkin and Stewart, JJ. Affirmed.

Bill in equity by a taxpayer to declare void a contract entered into between the County of Allegheny and the City of Pittsburgh, and for an injunction.

Swearingen, J., filed the following opinion:

The important question in this case is the constitutionality of the Act of April 18, 1913, P. L. 96. It has been attacked upon the following grounds:

1. It is alleged that the act violates Article III, Section 7, of the Constitution, which provides:

"The General Assembly shall not pass any local or special law......Regulating the affairs of counties, cities, townships, wards, boroughs or school districts ......Nor shall any law be passed granting powers or privileges in any case where the granting of such powers

and privileges shall have been provided for by general law, nor where the courts have jurisdiction to grant the same or give the relief asked for."

2. It is also alleged that the act violates Article III, Section 20, which provides that:

"The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

In the courts, the presumption is that a statute, regularly enacted by the law-making branch of the government, is constitutional. "We can declare an Act of Assembly void, only when it violates the Constitution clearly, palpably, plainly; and in such manner as to leave no doubt or hesitation on our minds": Com. ex rel. v. Hyneman, 242 Pa. 244.

Is the act now in question a local or special law, within the meaning of the prohibition contained in Article III, Section 7, of the Constitution above quoted? The act authorizes the construction of joint county and municipal buildings. Both counties and cities must have such buildings, and the cost thereof must be paid out of the public funds raised by taxation. There can be no doubt that the act purports to regulate the "affairs of counties and cities." If, therefore, it is a local or special law, as contended by the complainant, it offends against said Article III, Section 7, of the Constitution. If it is not a local or special law, the legislature did not transcend its powers in enacting the same.

The act provides:

"That in each county of this Commonwealth, where the county seat is within the limits of any city, the county commissioners and the corporate authorities of such city shall have the power, and they are hereby authorized, to agree upon a site within the limits of such city, and to erect thereon a joint county and municipal

building, to be used by the county for court house and other· county purposes ·and to be used by the city for municipal purposes."

It is apparent, of course, that the act did not apply, and it was not intended to apply, to all the counties and cities of the State, at the date of its passage. But no county nor city was excluded from its operation. In time every county seat in the State may be within the limits of a city, for no distinction is made between cities. It is a fact, of which we take notice, that the act does apply to many counties and cities. Harrisburg in Dauphin County, Scranton in Lackawanna County, New Castle in Lawrence County, Philadelphia in Philadelphia County, and Pittsburgh in Allegheny County, are some that may be mentioned. But it does not now apply to all counties. Therefore the act is one of classification. It authorizes the erection of joint county and municipal buildings, where the county seat is within the limits of a city, and it necessarily excludes from its present operation those counties in which such conditions do not exist. Is this a genuine classification, founded upon "natural, reasonable and necessary conditions"?

It seems to us that there is a real distinction between counties, wherein the county seats are within the limits of cities, and counties where they are not. In the former case, cities have grown up from natural causes. They have necessarily become the centers of great populations with all that is implied thereby. The counties have in consequence, and likewise from natural causes, also become of great importance. In a county, where such a condition exists, the two municipalities must have buildings for the transaction of the business of the public. A more commodious and convenient building can be erected jointly than can two or more be erected separately, and necessarily the expense to the taxpayers of both will be far less. Many difficulties in securing a suitable and proper site will be avoided by a joint building. But the great consideration is the convenience of

·the public. The convenience of the people in transacting their business with the county and city will be much more efficiently subserved by having the courts and the public offices of both municipalities in substantially the same place. Especially is this true here, where the population of Pittsburgh is almost half of the entire population of the County of Allegheny. It is therefore apparent that there is a real, not a fanciful, distinction between counties in which the county seats are located within the limits of cities, and those in which they are not. The former do possess "natural, reasonable and necessary conditions," which do not belong to the latter. Pittsburgh's Petition, 217 Pa. 227.

We cannot distinguish between the classification prescribed in the act under consideration and that in the Act of May 6, 1897, P. L. 46. The latter made bridges over streams which divided counties a separate class and authorized the counties to rebuild them, under certain conditions. The Supreme Court, in an opinion by Justice MITCHELL, held that the classification was genuine and founded upon a real distinction. In the opinion it is said :

"Legislation for a class distinguished from a general subject is not special but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is, not wisdom, but good faith in the classification.

"The first condition" (a bridge over a river or stream forming the boundary line between two counties) "is founded on a natural and manifest distinction, which is to a large extent unavoidably local. Rivers or streams forming boundaries between counties are comparatively few in number, and their locality is fixed. So also

bridges over them are almost necessarily fixed as to location, by the centers of population and travel. They form a distinct class, because not exclusively a bridge of either county and they are matters of exact site, style, material, expense, etc., as to which the two counties may not be in harmony. This basis of classification, therefore, is not only competent but obviously proper." Seabolt v. Commissioners, 187 Pa. 318.

In the said Act of 1897, the conditions prescribed coexisted in but few counties of the State, and they probably never will coexist in all of them. These conditions limited the operation of the act to but few places and necessarily made it local in effect. But the court held that, since the conditions were genuine and called for legislation peculiar thereto, the mere fact that it applied to but few places did not make the law local and special within the meaning of the constitutional prohibition. In this Act of 1913, there are no conditions which will necessarily restrict its operation to particular counties. In due time, and from purely natural causes, the act may extend to all the counties of the State, for none can be excluded. And we discover no prohibition in the Constitution against making cities, which are county seats, a distinct class for necessary legislative purposes. Other circumstances than mere differences in population justify classification. In the Act of February 7, 1906, P. L. 7, authorizing the annexation of cities and providing for a temporary government and the payment of the indebtedness of each and the enforcement of claims, such cities had to be "contiguous or in close proximity" and no borough must intervene. Thus the act did not apply to all cities, and it was therefore a classification founded upon the conditions stated. This was sustained in: Pittsburgh's Petition, 217 Pa. 227, supra.

We must therefore conclude that the classification prescribed in the Act of April 18, 1913, is founded upon a real, genuine distinction and that therefore it is a general, and not a local or special, law. It is not local,

because it does not pertain to a definite place and is not restricted to one portion of the State. It is not special, because it does not relate to particular persons, places or things. With the wisdom of the legislation we have nothing whatever to do.

Neither does the Act of 1913, in our opinion, offend against the last paragraph of Section 7, Article III, of the Constitution above quoted. Even if this paragraph could be held to extend beyond the object of said Section 7, which is an enumeration of subjects concerning which local or special legislation is prohibited, we are unable to perceive how it has any application to the situation disclosed by this record. It is true, both counties and cities had the power to acquire land and to erect buildings for their respective public purposes, but they did not, prior to this act, have power to join in the erection of a building, which could be utilized in the manner prescribed, and to sell or exchange their lands as designated. These are powers which had not been previously provided for by general law. If this be true, it cannot be said that the Act of 1913 offends against the last paragraph of Section 7, Article III, of the Constitution.

We are also of opinion that the act is not in violation of Section 20, Article III, above quoted. Clearly, this Act of 1913 does not pretend to "delegate to any special commission" any powers whatever. It authorizes the lawfully constituted authorities of counties and of cities to do certain things. The purpose of the said section was to thereafter prohibit the legislature from naming a commission, composed of members who were in no way connected with the constituted authorities of municipalities, which was to perform some duty of a municipal character. But it was not thereby intended to prohibit the legislature from authorizing counties and cities, jointly or severally, to perform any lawful and necessary municipal function, which can only be done by the governing bodies thereof, whose membership will change from time to time as their terms expire.

In view of the foregoing, how can it be said that the Act of April 18, 1913, P. L. 96 "violates the Constitution clearly, palpably, plainly, and in such manner as to leave no doubt or hesitation on our minds"? Certainly we cannot say so. We therefore hold that said act is constitutional.

"If, therefore, the legislature had the power to enact the statute of April 18, 1913, it could authorize counties and cities to do what is prescribed therein. It could empower them to erect joint buildings, to convey lands to each other, in exchange or otherwise, and to sell lands no longer needed for public purposes. There is no provision in the Constitution, to which our attention has been called, which prohibits the legislature from granting by general law the powers enumerated in the Act of 1913. If the Constitution does not forbid the enactment of such legislation, the authority to do so is presumed to have been conferred, because the act is "in its character and essence a law." The power of the Pennsylvania Legislature to pass any statute of such kind is unlimited, except where restrained by express or necessarily implied constitutional prohibition. Sharpless v. Philadelphia, 21 Pa. 147.

It was neither alleged, nor was there any proof to show, that any fraud was committed on the part of the county commissioners or of the authorities of the City of Pittsburgh. Hence in the making of the contract, and in choosing an architect, the said representatives of the county and city are presumed to have acted in good faith. It does not appear that they passed the bounds of the authority vested in them by the statute. It was their duty to choose an architect. It was their duty to provide for his compensation. They were not obliged to adopt a program of competition. They might have chosen an architect without any competition. Therefore their judgment cannot be reviewed by the court, in the absence of an allegation of fraud, or unmistakable proof of an abuse of discretion. While there may be honest

differences of opinion as to what has been done by the authorities, yet the evidence submitted is clearly insufficient to warrant a finding that there was any abuse of discretion by them. It is true, that in cities of the second class "All contracts relating to city affairs shall be let to the lowest responsible bidder after reasonable notice......." A similar provision also governs the letting of contracts by the county. It has never been held, so far as we have been able to ascertain, that the above provisions apply in the making of contracts for the employment of attorneys, physicians, engineers, or others, involving professional skill. Certainly an architect's services do involve professional skill, knowledge and judgment.

"Scientific knowledge or professional skill has also been regarded as furnishing a ground for an exception to the statutory rule. Thus it has been said that the services of a lawyer, of a physician, or of an architect or a surveyor, are not embraced within a provision requiring the letting of contracts to the 'lowest bidder." Dillon on Municipal Corporations, Section 1203.

We have been asked to find that the indebtedness of the City of Pittsburgh, at the time of the passage of the Act of April 18, 1913, P. L. 96, was, and still is, largely in excess of any indebtedness which the council of said city has the right to create, and we have declined to do so, because we regarded such a finding as immaterial to any issue in this case. Testimony was introduced at the trial, showing that the constitutional limit of indebtedness had been exceeded by the City of Pittsburgh. But it does not appear that the City of Pittsburgh will incur any indebtedness by reason of the contract, mentioned in Findings of Fact 7. No appraisement of the real estate of either the county or the city has yet been made. Therefore it is impossible now to determine whether the city will or will not incur any indebtedness whatever by reason of the proposed exchange. The City of Pittsburgh now has in its possession the sum of

$1,500,000, being the proceeds of bonds authorized for the construction of a municipal building. There was no condition that this building was to be erected in any particular place. Consequently it was within the discretion of the city authorities to determine where the building should be located. This statute now provides that the building may be located alongside of the county building, the two to be erected jointly. In our judgment, the said fund of $1,500,000 will be applicable for the erection of that joint building  So far as appears, we are unable to say, and it cannot be now shown, that the cost of the city's portion of the joint building will exceed the amount of money which is at present available therefor. In view of the foregoing, it cannot be determined that the city will incur any indebtedness by reason of the project under consideration. Therefore, the question whether or not the indebtedness of the city now exceeds the constitutional limit is immaterial.

In view of the whole case as presented, we are constrained to hold that the complainant is not entitled to the relief for which he has prayed in the bill, and that it must be dismissed.

The court on final hearing dismissed the bill. Plaintiff appealed.

*Error assigned*, among others, was the decree of the court.

*A. E. Anderson*, with him *John S. Ferguson* and *Jos. F. Mayhugh*, for appellant, cited: Ayars's App., 122 Pa. 266; Safe Deposit Company v. Fricke, 152 Pa. 231; Perkins v. Philadelphia, 156 Pa. 554-562; Blankenburg v. Black, 200 Pa. 629; Knox Street, Opening of, 12 Pa. Superior Ct. 534; City of Reading v. Savage, 120 Pa. 198; Frost v. Cherry, 122 Pa. 417; Sample v. Pittsburgh, 212 Pa. 533; Davis v. Clark, 106 Pa. 377; Parker v. Com., 6 Pa. 507; Perkins v. Philadelphia, 156 Pa. 554; Porter v. Shields, 200 Pa. 241; Bucher v. Northumber-

land County, 209 Pa. 618; Wolff Chemical Company v. Philadelphia, 217 Pa. 215-225; Lamb v. Redding, 234 Pa. 481.

*Edward B. Vaill* and *C. A. O'Brien*, with them *A. B. Hay* and *J. B. Eichenauer*, for appellees, cited: Stegmaier v. Jones, 203 Pa. 47, 50; Seabolt v. Commissioners, 187 Pa. 318; Commonwealth v. Gilligan, 195 Pa. 504; Rose v. Beaver County, 204 Pa. 372; Bennett, et al., v. Norton, et al., 171 Pa. 221; City of Newport News v. Potter, 122 Fed. 321; O'Brien v. Niagara Falls, 119 N. Y. Supp. 497; City of Houston v. Glover, 40 Texas Civ. App. 177; Silsby Mfg. Co. v. Allentown, 153 Pa. 319; Wade v. Oakmont Boro., 165 Pa. 479; Philadelphia v. Pemberton, 208 Pa. 214.

PER CURIAM, May 22, 1914:

The decree appealed from is affirmed at the cost of the appellant on the opinion of Judge SWEARINGEN.