## HUNTER et al. v. WHITEAKER & WASH-INGTON et al. (No. 6549.)

(Court of Civil Appeals of Texas. San Antonio. April 20, 1921. Rehearing Denied May 26, 1921.)

**1. Highways 113(3)—Contracts for service of civil engineers may be let without competitive bidding.**

Rev. St. art. 2268a, as added in 1917 (Vernon's Ann. Civ. St. Supp. 1918, art. 2268a), requiring commissioner's court, before entering into a contract requiring the expenditure of $2,000 or more, to submit the contract to competitive bids, *held* not applicable to county's contract with civil engineers for professional services in connection with the construction and maintenance of public highways and roads in proceedings under Rev. St. tit. 18, c. 2, as amended in 1917, in view of Rev. St. 1911, arts. 640, 1460–1498, 2571, 5535, and 5972, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1498c. and in view of the purpose of the statute, and the absurdity of letting contracts for professional services of a technical nature through competitive bidding.

**2. Statutes 225—Purpose of statute in connection with statute to which it was intended to be cumulative considered.**

Statute must be construed not only by its own language, but the court must consider the ends sought to be obtained by it in connection with the statute to which it was intended to be cumulative.

**3. Statutes 212—Presumed not to have been intended to provide for an absurdity.**

The court, in construing a statute, will not presume that the Legislature intended to provide for an absurdity.

**4. Statutes 206, 225—Construed as a whole in connection with other statutes on same subject.**

In construing statute, all parts thereof must be given effect, and it must be read in the light of other statutes on the same subject.

Appeal from District Court, Johnson County; Bruce Young, Judge.

Suit by E. E. Hunter and others as residents and taxpayers of Johnson County, Tex., against Whiteaker & Washington and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

S. C. Padelford, of Fort Worth, and J. E. Warren and H. P. Brown, both of Cleburne, for appellants.

J. I. Kilpatrick, Jr., Walker & Baker, and Prestridge & Keith, all of Cleburne, for appellees.

FLY, C. J. It is alleged in the petition that the suit was instituted by "The county of Johnson, a municipal corporation, by and through E. E. Hunter, W. H. Griffith, C. E. Dempwolf, H. C. Gresham, J. M. Wright, J. F. Irvin, D. G. Wilson, O. B. Foster, Ben Simonds, E. S. Clack, S. L. Hazlett, W. A. Killough, resident domiciled taxpaying voters of Johnson county, Tex.," and the parties named not only claim to represent the county but "all other taxpaying voters" in the county, and they brought their action against the county judge and county commissioners "and all the said defendants as the commissioners' court of Johnson county, Tex.," and the firm of Whiteaker & Washington, whose members are R. O. Whiteaker and W. O. Washington. The prayer is that the commissioners' court and Whiteaker & Washington be restrained "from carrying out or proceeding any further" under a certain contract wherein the commissioners' court had agreed to pay certain sums to Whiteaker & Washington for their services as civil engineers in supervising and laying out the work of building roads in Johnson county, under a bond issue of $2,000,000 voted by the people of the county. The cause was tried by the court, a jury not having been demanded, and judgment was rendered that appellants take nothing by their suit, and pay all costs.

On May 10, 1919, the voters of Johnson county, by a two-thirds majority, voted in favor of an issue of bonds for $2,000,000, for the purpose of building and maintaining a system of public roads in and for said county. The election was in strict compliance with law, and the bonds were duly and legally issued and sold, and the proceeds deposit-

ed in the National Bank of Cleburne. On July 3, 1919, a contract was entered into between the commissioners' court of Johnson county and Whiteaker & Washington by which the latter were employed as civil engineers to lay out the roads and supervise the road building of the county. Before entering into the contract, the commissioners' court, acting in conjunction with representative citizens of the county, had made a full and thorough investigation of the work, reputation, and ability of the firm of engineers, as well as investigating the reputation and ability of a large number of other engineers who had filed proposals with the commissioners' court, and had chosen the firm of Whiteaker & Washington as making the best and most advantageous proposal. The contract was not made through competitive bids, nor was any notice given that such contract would be made. No fraud was shown upon the part of any of the contracting parties, but the contract was entered into in an honest and open manner, and the engineers entered into the performance of their contract duties. We adopt the conclusions of fact of the trial judge, none of which is assailed except the one which found that the contract was for "professional services on the part of the engineers requiring technical and scientific training and skill," and that finding is only excepted to because of the conclusion of law based on it. The conclusion of fact is undoubtedly sustained by the evidence, as well as common knowledge as to what services are rendered by civil engineers.

[1] There is but one question of law in this case, and that is whether a commissioners' court has the legal power and authority to enter into a contract with engineers for their technical and professional services in connection with the construction and maintenance of public highways and roads in their county, without advertising for competitive bids for such services. It is the claim of appellants that, by the terms of article 2268a, Revised Statutes, which was passed by the Thirty-Fifth Legislature, and approved by the Governor on March 30, 1917 (Laws 1917, c. 141 [Vernon's Ann. Civ. St. Supp. 1918, art. 2268a]), no contract calling for or requiring the expenditure or payment of $2,000 or more out of funds of any county can be made by the commissioners' court, without first submitting such contract to competitive bids after giving notice of the time and place, when and where, such contract will be let by publishing in a newspaper, published in the county or subdivision, once a week for two weeks, prior to time for letting such contract.

For some reason, sufficient for the legislative mind, it is indicated that the article in question should become a part of title 29, c. 2, Revised Statutes of 1911, for it is provided in the second section of the act that

it shall not be construed to repeal any part of that title and chapter, but that it "shall be cumulative to said title and chapter." The title and chapter in question is on the appointment and duties of the county auditor, and does not purport to repeal any law.

The election for the issuance of bonds was held in May, 1919, under the authority of title 18, c. 2, Revised Statutes, as amended in 1917, and the lawful issuance and sale of the bonds by the commissioners' court is not questioned, the only issue being as to the method of employing a civil engineer to have charge of the construction of the roads contemplated by the bond issue. Undoubtedly, the law was passed for the guidance of the auditor in the discharge of his duties, which are a general oversight of all the books and records of all the officers of the county, district, or state who are authorized to collect moneys belonging to the county, and, among other duties, it is enjoined upon him that he must examine and approve claims, and shall not audit or approve any claim against the county unless the same has been contracted as provided by law. Article 1484. To this instruction, there is given by the act of March 30, 1917 (Vernon's Ann. Civ. St. Supp. 1918, arts. 2268a, 2268b), a definition of what shall constitute contracts made as provided by law, and it is made cumulative of the other provisions applying to the county auditor. It has reference to the same character of accounts and claims against the county that are contemplated in the provisions of title 29, c. 2, Revised Statutes. All of those provisions point to accounts and claims against the county for labor and materials furnished.

[2-4] The terms of the act of 1917, in the first part of section 1, seem broad enough to cover all contracts requiring a greater expenditure of money than $2,000, but the act must be construed not only by its own language, but the ends sought to be attained by it in connection with the statute to which it was intended to be cumulative. It must not be presumed, when construing a statute, that the Legislature intended to provide for an absurdity, but all parts of the statute must be given effect, and it must be read in the light of other statutes on the same subject.

In article 640, Revised Statutes, which is not repealed by the act of 1917, and which is legislation as to public roads, it is provided that competitive bids shall be obtained for road work, and the act of 1917 must be construed so that it will not, by implication, repeal that law, but, if possible, must be construed so as to be consistent with its terms. That article has in view contracts for labor for constructing roads in any county or district, and has no reference to the employment of a man to lay out, measure, and prepare plans for the construction of roads. We must conclude that the Legislature had in view the same kind of road contracts in-

dicated in the special law as to public roads, and this construction is borne out by the language of the act itself, in the proviso as to what the act shall not apply. After using the general language as to contracts, it is provided:

"That the provisions of this act shall not apply to any work done under direct supervision of the county commissioners, and paid for by the day."

To paraphrase the law, it would read:

"The commissioners' court of this state shall make no contract for work calling for or requiring the expenditure, etc.: Provided, that the provisions of this act shall not apply to any work done under direct supervision of the county commissioners and paid for by the day."

If this construction is not placed on the act, the proviso is a complete non sequitur. Evidently, the whole act refers to contracts for labor or work or material entered into by the commissioners' court.

To hold that the act would require that the services of a man belonging to a profession such as that of the law, of medicine, of teaching, civil engineering, or architecture should be obtained by a county only through competitive bidding would give a ridiculous meaning to the act, and require an absurdity. It would not only ingraft this absurdity on the law as to employing a road engineer, but would require the employment of a civil engineer, provided for in article 2571, by competitive bids if his work, at $10 a day, should last for seven months' time; as well as a civil engineer in improvement districts, as provided for in article 5535, and engineers of navigation districts, as provided for in article 5972. In the last-named case, the commissioners' court is not restricted as to the amount of salary of the engineer. The same can be said of the salary of the superintendent of county hospitals, which is fixed by the board of managers, subject to the commissioners' court. Vernon's Sayles' Ann. Civ. St. 1914, art. 1498c. If such a construction could be legitimately placed upon the act of 1917, it would not only revolutionize the manner of appointment of road engineers all over Texas, but would create an upheaval in several other departments of county governments.

Such a construction would require the selection of attorneys, physicians, school teachers, and civil engineers by competitive bids, the only test being the lowest bid for the services of such men. Such a test would probably be the best that could be conceived for obtaining the services of the least competent man, and would be most disastrous to the material interests of a county.

Civil engineering is a profession, requiring years of education and service to obtain perfection in it, and calling, in its application, for a high order of intelligence and extraordinary skill and learning, and it was never contemplated by the Legislature that the money of the citizens of a county, raised for road purposes, should be expended upon the advice of a civil engineer who had obtained his employment by underbidding his competitors, and without regard to his ability to fill the position.

Similar laws to the act of 1917 have been considered in other states, and it seems to be the invariable ruling that laws as to competitive bids do not apply to the employment of those possessed of scientific knowledge or professional skill. As said by Judge Dillon, in his work on Municipal Corporations, § 802:

"Whenever the nature of the service, or of the property needed for the public uses, or the time within which it must be had to prevent irreparable mischief, is impossible under competitive offers, then the provisions of the statute cannot apply, because such could not have been the intention of the lawmakers, and such emergencies were not amongst the mischiefs which the provisions referred to were designed to correct. A city needs lands in a particular locality for a public market, an engine house, or other public building; it requires professional services, those of an engineer, physician, lawyer, or an artist, or it may require services of any kind, and property, to be furnished upon a sudden and unforeseen emergency, of greater value than the sum fixed by the statute as the minimum for which orders can be given without competitive bidding."

The text is supported by Harlem Gas Co. v. Mayor of New York, 33 N. Y. 309, and Stratton v. Allegheny county, 245 Pa. 519, 91 Atl. 894. In the latter case, it was stated in regard to a law similar to that of the act of 1917:

"It has never been held, so far as we have been able to ascertain, that the above provisions apply in the making of contracts for the employment of attorneys, physicians, engineers, or others, involving professional skill."

A quotation from Dillon is adopted in that case, as follows:

"Scientific knowledge or professional skill has also been regarded as furnishing a ground for exception to the statutory rule. Thus it has been said that the services of a lawyer, of a physician, or of an architect, or a surveyor, are not embraced within a provision requiring the letting of contracts to the lowest bidder."

See, also, City of Houston v. Glover, 40 Tex. Civ. App. 177, 89 S. W. 425, and City of Houston v. Potter, 41 Tex. Civ. App. 381, 91 S. W. 389.

We conclude that there is no error in the judgment, and it will be affirmed.