

# The Attorney General of Texas

May 28, 1981

Overruled By:
MW-494

#_____

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Oscar H. Mauzy, Chairman
Senate Education Committee
Texas Senate, State Capitol
P. O. Box 12068
Austin, Texas  78711

Opinion No. MW-342

Re:  Whether insurance contracts purchased by school districts must be let on competitive bids

Dear Senator Mauzy:

You have requested our opinion as to whether section 21.901 of the Texas Education Code requires that contracts for the purchase of school insurance, excluding policies which are part of teacher employment contracts, be awarded through the competitive bidding process. If we answer this question in the affirmative, you wish to know the status of a contract which is not bid. Finally, you have asked whether a motion to approve and a vote to accept an insurance contract made by a school board member with an interest in the group providing the contract creates a conflict of interest sufficient to void the contract.

Section 21.901 provides in pertinent part:

(a) Except as provided in Subsection (e) of this section, all contracts proposed to be made by any Texas public school board for the purchase of any personal property shall be submitted to competitive bidding, if the average daily attendance during the previous school year in that school district exceeded 3,000 pupils, when said property is valued at $5,000 or more, and if the average daily attendance during the previous school year in that school district was 3,000 pupils or less, when said property is valued at $2,000 or more.

. . . .

(c) Nothing in this section shall apply to fees received for professional services rendered, including but not limited to architects fees, attorney's fees, and fees for fiscal agents.

In McBroome-Bennett Plumbing, Inc. v. Villa France, Inc., 515 S.W. 2d 32, 36 (Tex. Civ. App. - Dallas 1974, writ ref'd n.r.e.), "insurance" was defined as:

> an undertaking by one party, usually called the 'insurer,' to protect the other party, generally designated as the 'insured' or 'assured,' from loss arising from named risk, for the consideration and on the terms and under the conditions recited. An insurance policy is a contract entered into between the insurer and the insured, by which each party becomes bound to perform the obligations assumed in the policy of insurance.

If "insurance" involved nothing more than the insurance policy which is finally negotiated, we would conclude that the purchase of insurance involved the purchase of property. See, e.g., Brown v. Lee, 371 S.W. 2d 694 (Tex. 1963); Mathews v. Mathews, 414 S.W. 2d 703 (Tex. Civ. App. - Austin 1967, no writ). It is clear, however, that insurers do much more than write policies. A purchaser of property insurance, for example, will be vitally interested in such things as the professionalism exhibited by the insurer, the frequency and thoroughness with which he inspects the insured property, and the promptness, efficiency and honesty with which he services claims and provides assistance. An insurer's ability to provide certain services in a competent manner, in other words, is a dominant, if not the primary, consideration in any purchase of insurance.

Contracts for the purchase of professional services have long been held to be exempt from competitive bidding requirements. The policy considerations underlying this exemption were well stated in Hunter v. Whiteaker & Washington, 230 S.W. 1096 (Tex. Civ. App. - San Antonio 1921, writ ref'd), wherein the court held that article 2268a, V.T.C.S., did not require a contract for the purchase of technical and professional services provided by an engineer in connection with the construction of a highway to be awarded through the competitive bidding process. The court reasoned as follows:

> To hold that the act would require that the services of a man belonging to a profession such as that of the law, of medicine, of teaching, civil engineering, or architecture should be obtained... only through competitive bidding would give a ridiculous meaning to the act. ... Such a construction would require the selection of attorneys, physicians, school teachers, and civil engineers by competitive bids, the only test being the lowest bid for the services of such men. Such a test would probably be the best that could be conceived for obtaining the services of the least competent man. ...

230 S.W. at 1098. This reasoning has been applied in subsequent cases. See, e.g., McCloud v. Cadiz, 548 S.W. 2d 158 (Ky. 1977) (contract for insurance and banking services need not be bid); Vilbig Bros. v. City of Dallas, 91 S.W. 2d 336 (Tex. 1936) (public construction contract); Stephens County v. J.N. McCammon, Inc., 52 S.W. 2d 53 (Tex. 1932) (contract to hire architect to prepare plans for jail and supervise

construction); Cochran County v. West Audit Co., 10 S.W. 2d 229 (Tex. Civ. App. - Amarillo 1928, writ ref'd) (contract to employ county auditor); Tackett v. Middleton, 280 S.W. 563 (Tex. Comm'n App. 1926 ); Lynd v. Hefferman, 146 N.Y.S. 2d 113 (App. Div. 1955), appeal denied mem., 149 N.Y.S. 2d 236 (1956); Attorney General Opinions H-680 (1975); M-242 (1968). But see Austin v. Housing Authority of Hartford, 122 A. 2d 399 (Conn. 1956).

As this discussion illustrates, the purchase of insurance cannot be neatly characterized as the purchase of either "personal property" or "professional service," within the meaning of section 21.901; to some extent, both categories are involved. Section 21.901 does not, however, indicate whether a purchase involving both property and services must be made on the basis of competitive bids. But in our opinion, the weight of authority compels us to conclude that, at least where insurance is involved, such a purchase need not be so made. As we have shown, the relationship between an insurer and his client is one of trust and confidence. Moreover, the kinds of services routinely performed by an insurer and expected by the insured — which services involve specialized training, expertise, and experience — are analogous to the services involved in the contracts which were held to be exempt from the bidding process in the cases cited above.

We therefore conclude that a contract for the purchase of insurance would most accurately be described as one for the purchase of services, and therefore, that it need not be awarded through the competitive bidding process. Compare V.T.C.S. art. 601b, §3.01(a) (purchase by state of supplies, materials, services, and equipment). In light of our conclusions, we need not address your second question.

Your final question is whether a public school trustee's action in moving and then voting for the school board to accept a contract with a group in which he has an interest creates a conflict of interest sufficient to void the contract.

The general rule applicable to transactions involving a conflict of interest on the part of public officials was set forth in Meyers v. Walker, 276 S.W. 305, 307 (Tex. Civ. App. - Eastland 1925, no writ):

> If a public official directly or indirectly has a pecuniary interest
> in a contract, no matter how honest he may be, and although he
> may not be influenced by the interest, such a contract so made
> is violative of the spirit and letter of our law, and is against
> public policy.

See also City of Edinburg v. Ellis, 59 S.W. 2d 99 (Tex. Comm'n App. 1933); Penal Code §39.01.

Previous opinions of this office have applied this rule in an increasingly exacting manner. See Attorney General Opinions M-1236 (1972); M-625 (1970). In Attorney General Opinion H-916 (1976) this office cited various cases holding that any interest in the business or welfare of a company that would tend to affect an officer's judgment, enhance his salary or position, or prevent him from exercising absolute loyalty and

undivided allegiance to the best interests of the governmental entity he serves would be sufficient to prevent the entity from contracting with the company. Among the cases cited was People ex rel. Pearsall v. Sperry, 145 N.E. 344, 345-46 (Ill. 1924), which held that the employment of nine city council members by a company which contracted with the city rendered the contract void. The court flatly stated that the council members:

> would be more than human if they could make the same fair and impartial contract with the contractor, as they could with another party with whom they had no relation by way of employment or otherwise. (Emphasis added).

The opinion concluded that a school board could not contract with a company which employs one of its trustees in a managerial capacity, even though the trustee derives no direct financial benefit from the contract.

In our view the rule to be deduced from these opinions, and the cases cited therein, is that if a trustee possesses a pecuniary interest in a contract or occupies a position with a company with which the board has contracted which would tend to prevent him from exercising absolute loyalty and undivided allegiance to the school district, such interest is sufficient to void the contract on grounds of conflict of interest. Because we have not been furnished any details regarding the nature and extent of the interest possessed by the trustee in question, or for that matter, the characteristics of the "group" in which he possesses the interest, we cannot say that this contract is or is not prohibited on grounds of conflict of interest. How the principles discussed apply to the particular situation about which you have inquired will have to be determined on the basis of the facts involved.

## SUMMARY

> A contract for the purchase of school insurance need not be submitted to competitive bidding under section 21.901 of the Texas Education Code. Whether a school trustee's interest in a group with which the school board has contracted will render the contract void depends upon whether the trustee possesses a pecuniary interest in the contract or occupies a position with the group which would tend to prevent him from exercising absolute loyalty and undivided allegiance to the school district.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Walter Davis
Rick Gilpin