

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

April 11, 1988

Honorable Bill Turner
Brazos County Courthouse
300 E. 26th Street, Suite 310
Bryan, Texas 77803

Opinion No. JM-890

Re: Whether a contract for microfilming of records of county clerks office is subject to competitive bidding (RQ-1280)

Dear Mr. Turner:

You ask:

> [W]hether the use of a private company to microfilm records for the County Clerk's Office of Brazos County must comply with the competitive bidding requirements of Local Government Code, Sec. 262.021 et seq., County Purchasing Act, or whether said item is a personal or professional service under Sec. 262.024(4), supra, and thus need not be competitively purchased.

You describe such services as follows:

> The County Clerk has contracted with a company in Dallas to microfilm legal instruments filed in the county clerk's office. The company furnishes the county clerk with a camera, film, and provides maintenance for the camera. Every day the county clerk microfilms the instruments filed in his office. At the end of each day he splices the film and sends it to the company in Dallas where it is developed. The company makes an archival print of the film which it keeps and returns the original microfilm back to the county clerk's office. The company also makes indices of the clerk's records, binds the indices and sends it to the county clerk's office. The annual

> cost for this service is slightly more  than
> $100,000.

Section 262.023(a) of the  Local Government Code  provides that, for county contract purchases requiring expenditures over $5,000, the commissioners court "must comply with the competitive bidding  or  competitive  proposal  procedures prescribed by this subchapter."

Section 262.024 of the Local Government Code provides in pertinent part:

> (a) A contract for the purchase of any of
> the  following  items  is  exempt  from  the
> requirement established  by section  262.023
> if the commissioners  court by order  grants
> the exemption:
>
> . . . .
>
> (4) a personal or professional service.

The  "personal  or  professional  service"  exception currently  codified  as  section  262.024(a)(4)  remains substantially  unchanged  from  that  in  the  section's predecessor provisions, article 2368a.5, section  4(a)(4), V.T.C.S. (Acts 1985, 69th Leg., ch. 641, §1, at 2377)  and article 2368a, section 2, V.T.C.S. (Acts 1931, 42nd  Leg., ch. 163, at 270-71).

> Prior  to  the  codification  of  the  "personal  or
> professional service" exception  in 1931, the  competitive
> bidding statute provided the  sole statutory exception  to
> its operation for "work done under the direct  supervision
> of the  county commissioners  and paid  for by  the  day."
> V.T.C.S. art. 2368 (Acts 1923, 38th Leg., ch. 127, at 262,
> repealed by Acts  1931, 42nd  Leg., at  269); and  V.T.C.S
> art. 2368a (Acts  1917, 35th  Leg., ch. 141,  §1, at  349,
> repealed in part by Acts 1987, 70th Leg., ch. 149, §49(1),
> at 2545).  <u>Hunter et al  v. Whiteaker & Washington et  al</u>,
> 230 S.W. 1096  (Tex. Civ.  App. - San  Antonio 1921,  writ
> ref'd)  considered  the  latter  statute  as  applied  to
> engineering services:

> There is but one question of law in  this
> case, and that  is whether a  commissioners'
> court has the legal  power and authority  to
> enter into  a  contract with  engineers  for
> their technical and professional services in
> connection  with  the  construction  and

> maintenance of public highways and roads in their county, without advertising for competitive bids for such services.
>
> . . . .
>
> To hold that the act would require that the services of a man belonging to a profession such as that of the law, of medicine, of teaching, civil engineering, or architecture should be obtained by a county only through competitive bidding would give a ridiculous meaning to the act, and require an absurdity.
>
> . . . .
>
> Such a construction would require the selection of attorneys, physicians, school teachers, and civil engineers by competitive bids, the only test being the lowest bid for the services of such men. Such a test would probably be the best that could be conceived for obtaining the services of the least competent man, and would be most disastrous to the material interest of a county.
>
> Civil engineering is a profession, requiring years of education and service to obtain perfection in it, and calling, in its application, for a high order of intelligence and extraordinary skill and learning, and it was never contemplated by the Legislature that the money of the citizens of a county, raised for road purposes, should be expended upon the advice of a civil engineer who had obtained his employment by underbidding his competitors, and without regard to his ability to fill the position.

Id. at 1097-98.

Gulf Bitulithic Co. v. Nueces County, 11 S.W.2d 305 (Tex. Comm'n App. 1928, judgm't adopted) ruled on the applicability of the competitive bidding requirements imposed by article 2368a, to the services of a company engaged by the county to supervise the construction of county roads. Stressing that the county itself directly paid the cost of labor and material for the projects, and that "[t]he company was not employed as contractor or

materialman but as agent" the court, in holding such services within the "personal or professional services" exception, reasoned as follows:

> To hold that contracts for the _supervision_ of work done directly by the county must be let to the lowest bidder would result in the county obtaining the least competent supervision, as those possessing the necessary skill, experience, and business judgment to supervise a large construction program in the most efficient and economical manner could not hope to successfully compete with those of lesser skill, experience, or business judgment. (Emphasis added.)

_Id._ at 309.

_Wallace v. Commissioners Court of Madison Co._, 281 S.W. 593 (Tex. Civ. App. - Waco 1926), _rev'd on other grounds_, 15 S.W.2d 535 (Tex. 1929), considered a county contract with a company for various services such as making abstracts of property upon which taxes were delinquent, making a map and plat system or block map of all land in the county, surveying where necessary or agreed, and making reports of such to the commissioners court, and held that:

> Some of the things embraced in the contract in this case would perhaps require technical knowledge and some would not, and those that do not would be controlled by [the competitive bidding requirements of] said statute.

_Id._ at 595.

Attorney General Opinion MW-344 (1981) pointed out that the pre-1931 cases established an exception for services involving "special skills," but that the language of the exception adopted in 1931 for "personal or professional services" does not on its face appear to be a mere codification of that prior court-created exception.

"Personal services" in its ordinary meaning, for example, would include other sorts of services than only those involving "special skills." Recently, Attorney General Opinion JM-486 (1986), in seeking to elucidate the scope of the personal service exception, referred to a

definition of personal services developed by <u>Van Zandt  v. Fort Worth Press</u>, 359 S.W.2d 893 (Tex. 1962) which had considered the applicability of a statute providing for recovery of attorneys fees by persons "having a valid claim . . . for personal services rendered."  Attorney General Opinion JM-486 concluded with respect to the question of the applicability of the competitive bidding statute to janitorial services:

> Someone who claims to have rendered 'personal services' must have performed the services himself.  The claimant's employees, in contrast, may have rendered 'services.' If the contract you ask about requires a specific person to perform janitorial services, it is a contract for personal services.  If the contract merely requires a person or corporation to provide persons who will perform janitorial services, it is not a contract for personal services.

It is our opinion that the microfilm services which are the subject of your request are not "personal services" within the scope of section 262.024(a)(4) of the Local Government Code, because from your description of such services they are not to be rendered by a person or persons chosen specifically by the commissioners court, but rather by personnel of the service company, many or most of whom are unknown to the commissioners.

The next question is:  Are the microfilm services "professional services?"  Webster's definitions of "professional" range from "of relating to, or characteristics of a profession" to "engaged in one of the learned professions" and "characterized by or conforming to the technical or ethical standards of a profession."  The definition of profession includes "a calling requiring specialized knowledge and often long and intensive academic preparation" as well as "a principal calling, vocation, or employment."  <u>See</u> Webster's Ninth New Collegiate Dictionary (1985).

Black's Law Dictionary (5th Ed. 1979) contains the following entry under "profession":

> A vocation or occupation requiring special, usually advanced, education and skill; <u>e.g.</u> law or medical professions. Also refers to whole body of such profession.

> The labor and skill involved in a profession is predominantly mental or intellectual, rather than physical or manual.
>
> The term originally contemplated only theology, law, and medicine, but as applications of science and learning are extended to other departments of affairs, other vocations also receive the name, which implies professed attainments in special knowledge as distinguished from mere skill.

Maryland Casualty Co. v. Crazy Water Co., 160 S.W.2d 102 (Tex. Civ. App. - Eastland 1942, no writ) interpreted the meaning of "professional" services as found in an insurance policy rider and found that the services of the bath house operator policy holder were not "professional" services, the labor and skill required for the latter sorts of services being "predominantly mental or intellectual, rather than physical or manual." Id. at 105. Maryland Casualty Co. was cited in Attorney General Opinion MW-344 (1981), which held that a contract for the services of a container terminal operator was not one for "professional services."

A more recent indication by the legislature as to the present scope of the "professional" service exception it created 57 years ago is found in two other sections of the County Purchasing Act:

§262.022. Definitions

In this subchapter:

. . . .

(3) 'High technology item' means a service, equipment, or good of a highly technical nature, including:

(A) data processing equipment and software and firmware used in conjunction with data processing equipment;

(B) telecommunications, radio, and microwave systems;

> (C) electronic distributed control systems, including building energy management systems; and
>
> (D) technical services related to those items.

Local Gov't Code §262.022.

> §262.030. Alternative Competitive Proposal Procedure for Insurance or High Technology Items
>
> (a) The competitive proposal procedure provided by this section may be used for the purchase of insurance or high technology items. Quotations must be solicited through a request for proposals. Public notice for the request for proposals must be made in the same manner as provided in the competitive bidding procedure. The request for proposals must specify the relative importance of price and other evaluation factors. The award of the contract shall be made to the responsible offeror whose proposal is determined to be the lowest evaluated offer resulting from negotiation, taking into consideration the relative importance of price and other evaluation factors set forth in the request for proposals.

Local Gov't Code §262.030.

In providing for "high-technology items" a "competitive proposal" procedure alternative to the competitive bidding procedure set out in the Act, section 262.030 clearly contemplates that such high technology items are covered by the requirement of section 262.023 that certain items be purchased in compliance with the "competitive bidding or competitive proposal procedures." The legislature therefore could not have considered such "high technology" items to be exempted from the coverage of section 262.023 by the provisions of section 262.024 which provide for the "personal or professional service" and other exceptions to the operation of section 262.023.

It is our opinion that since the legislature intended such high technology items to be covered by the competitive bidding or competitive proposal requirements and not

to fall within the section 262.024 exceptions, it would not have considered the microfilm services in question here as exempted from coverage. If services requiring such high skills and technical expertise as "electronic distributed control systems," "microwave systems," and the other examples of high technology services listed in §262.022(3) are nevertheless not "professional" services within the meaning of §262.024(a)(4), then it is clear that the microfilm services which, from your description, involve a lower level of technology, are not "professional services."

We conclude therefore that the microfilm services you described are subject to the competitive bidding or competitive proposal requirements of the County Purchasing Act, Local Gov't Code §262.021, et seq.

### S U M M A R Y

A contract for microfilm services does not fall within the "personal or professional service" exception of Local Government Code section 262.024, and therefore must be let under the competitive bidding or competitive proposal procedures set forth in the County Purchasing Act, Local Government Code section 262.021, et seq.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General