615 A.2d 824

MODERN TRASH REMOVAL OF YORK, INC., Petitioner,

v.

DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.

Commonwealth Court of Pennsylvania.

Argued March 5, 1992.

Decided Aug. 18, 1992.

Pamela S. Goodwin, for petitioner.

Roger E. Kluck, for respondent.

Before CRAIG, President Judge, and McGINLEY, (P.) and KELLEY, JJ.

McGINLEY, Judge.

Modern Trash Removal of York, Inc., (Modern) appeals from a decision of the Environmental Hearing Board (Board) denying Modern's motion for summary judgment and requiring Modern to pay fees in connection with the relocation of solid waste.

The parties do not dispute the following facts. Modern, a subsidiary of Waste Management, Inc. (Waste Management), owns and operates a permitted landfill in York, Pennsylvania (Modern Landfill). Modern Landfill is synthetically lined, has a leachate collection system and a leachate and groundwater treatment plant and is monitored by a groundwater monitoring well program. On May 15, 1980, Stabatrol Corporation, also a subsidiary of Waste Management, purchased the Sunny Farms Landfill (Sunny Farms), an unlined, natural attenuation landfill closed by the Department of Environmental Resources (Department) in 1976.[1]

Because of its concerns about the environmental risks posed by Sunny Farms, and with the Department's encouragement, Sunny Farms Ltd., the operator of Sunny Farms, and Modern determined to excavate the municipal waste that had been

---

1. Natural attenuation landfills are by definition unlined and hence are not in compliance with Departmental standards. *See* 25 Pa.Code § 273.161.

deposited at Sunny Farms before 1976 and to relocate the waste to Modern Landfill. From November 1989 through August 1990, Modern relocated the municipal solid waste from Sunny Farms to Modern Landfill.[2] On February 21, 1990, Modern contacted the Department to inquire whether various fees imposed by the provisions of the Municipal Waste Planning, Recycling and Waste Reduction Act ("Act 101" or "the Act"), Act of July 28, 1988, P.L. 556, 53 P.S. §§ 4000.101–4000.1904, concerning the disposal of waste in permitted landfills, applied to the exhumed wastes. On May 22, 1990, the Department responded in writing to this inquiry, informing Modern that the fees were required.

Modern appealed the Department's decision to the Board on June 22, 1990. Both Modern and the Department filed motions for summary judgment, and the Board issued its opinion and order on June 3, 1991, denying Modern's motion for summary judgment, but granting in part and denying in part the Department's motion for summary judgment. The Board determined that the fees imposed by Act 101 are mandatory and apply to solid waste transferred from one landfill to another as a result of a voluntary clean-up. The Board did not grant summary judgment on the issue of whether fees could be imposed on the soils removed along with the waste from the Sunny Farms Landfill and deposited at the Modern Landfill, as an issue of fact remained to be resolved concerning whether the soils were separable from other waste or contaminated with other waste. Opinion and Order of the Environmental Hearing Board, June 3, 1991 (Board Opinion) at 1. It is from this decision that Modern appeals.

█ Our scope of review of an order by the Board is limited to a determination whether the findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Lucas v. Department of Environmental Resources*, 53 Pa.Commonwealth Ct. 598, 420 A.2d 1 (1980). Modern presents two issues for our review. First, Modern contends that the Board erred in determining that the fees imposed by Act 101 are

2. The exhumation project was completed in August, 1990.

mandatory and without exception in all circumstances. Second, Modern contends that the Board erred in determining that solid waste deposited in a landfill prior to the enactment of Act 101 is subject to the fees imposed by the Act when it is exhumed and relocated to another landfill.

Section 701(a) of Act 101, 53 P.S. § 4000.701, states:

There is imposed a recycling fee of $2 per ton for all solid waste processed at resource recovery facilities, and for all solid waste except process residue and nonprocessible waste from a resource recovery facility that is disposed of at municipal waste landfills. Such fee shall be paid by the operator of each municipal waste landfill and resource recovery facility.

An additional fee charged to the operators of municipal waste landfills is imposed by Section 1108 of the Act, 53 P.S. § 4000.1108. Section 1108 established a "post-closure fund," which must be maintained by a county in the event that remedial action becomes necessary after the closure of a landfill. Section 1108(c), 53 P.S. § 4000.1108(c), provides that each operator of a municipal waste landfill "shall pay into the trust ... an amount equal to 25 [cents] per ton on weighted waste, or 25 [cents] per three cubic yards of volume measured waste for *all* solid waste received at the landfill." (Emphasis added.) Finally, Section 1301 of the Act provides for a fee of "$1 per ton of weighted solid waste or $1 per three cubic yards of volume measured solid waste for *all* solid waste received at a landfill (emphasis added)" to be paid by the owner, when the owner receives an additional permit for disposal from the Department, unless the waste is generated within the county.

Modern contends the fees imposed by Section 701, 1108 and 1301 of the Act do not apply to voluntary cleanups of previously generated wastes. Modern argues that the words of the statute that impose the fees do not clearly and explicitly provide that previously generated and disposed of materials are subject to the fees, and only an overbroad construction of the Act would impose the fees on all solid waste disposed at a municipal waste landfill without exception.

■ The words of the Act are clear: the fees are imposed on *all* solid waste entering a landfill. Although the Act does not expressly provide that previously generated solid waste that is deposited in a landfill during the course of a clean-up operation is subjected to the fees, such previously generated solid waste falls within the category of "all solid waste" delineated by the statute. Modern argues that the Board's failure to read an exception into the statute is contrary to the policy behind Act 101, because such a construction discourages voluntary clean-up operations. However, where the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).[3]

We are not persuaded by Modern's contention that imposing fees on waste transferred from one landfill to another as part of a clean-up operation will not advance the purpose of Act 101, which is to provide for the correct disposition and eventual reduction of new solid waste generated and disposed of in the state. Again, Act 101 is clear and unambiguous; any inquiry into the purposes of the Act is unnecessary.

■ Modern also argues that the Department has the power to exempt deposits of previously generated waste from Act 101 fees. The Board relied on *Coretsky v. Board of Commissioners of Butler Township*, 520 Pa. 513, 555 A.2d 72 (1989), and determined that the Department has no discretion in imposing the fees because the Act directs that the fees "shall" be imposed. In *Coretsky*, the Pennsylvania Supreme Court interpreted Section 508 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10508, a provision containing the word "shall," and determined that words are to be construed according to their

---

**3.** Modern also cites *Stratton v. Allegheny County,* 245 Pa. 519, 91 A. 894 (1914), in which the Pennsylvania Supreme Court stated that a statute requiring "all contracts related to city affairs" for cities of the second class did not apply to certain contracts involving professional skill or special knowledge. Modern's argument that this dictum controls here, as the words "related to city affairs" qualify the phrase "all contracts," is not compelling. There is no similar qualification in Act 101's imposition of fees on "all solid waste."

common meaning in statutory interpretation, and "shall" is, by definition, mandatory. *Coretsky,* 520 Pa. at 518, 555 A.2d at 74. Modern alleges that the Board's reliance on *Coretsky* is misplaced and discounts the precedent set by *Francis v. Corleto,* 418 Pa. 417, 211 A.2d 503 (1965).

In *Francis,* our Supreme Court referred to the intention of the legislature when construing the word "shall" in the Philadelphia Retirement System Ordinance. *Francis,* however, was decided before the enactment of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991. As we have previously stated, the courts are bound to follow the letter of an unambiguous law, rather than its spirit, a fact recognized by the Supreme Court in deciding *Coretsky.*[4]

The decision of the Board is affirmed.

### ORDER

AND NOW, THIS 18TH Day of August, 1992, the order of the Environmental Hearing Board in the above-captioned matter is affirmed.

---

**4.** We do not mean to suggest that the Statutory Construction Act instructs that the term "shall" is never to be interpreted as "may," and recognize that we have interpreted "shall" in a discretionary manner since the passage of the act, for example, *Crossley Appeal,* 60 Pa.Commonwealth Ct. 351, 432 A.2d 263 (1981). However, the contextual setting of "shall" as it appears in Act 101 does not lend itself to a merely directory interpretation.