620 A.2d 1099

**PORT AUTHORITY OF ALLEGHENY COUNTY, Appellant,**

**v.**

**LOCAL 85, AMALGAMATED TRANSIT UNION, an unincorporated association, on behalf of itself and all of its members and individually, Appellees.**

Supreme Court of Pennsylvania.

Submitted Sept. 21, 1992.

Decided Feb. 17, 1993.

James J. Flaherty, Flaherty & Sheehy, P.C., Pittsburgh, for appellant.

Joseph J. Pass, Jr., Jubelirer, Pass & Intrieri, P.C., Pittsburgh, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

In this case, the Port Authority of Allegheny County ("PAT") was ordered by the Court of Common Pleas of Allegheny County to bargain collectively with their first level supervisors through the supervisors' authorized bargaining agent, Appellee—Local 85 of the Amalgamated Transit Union ("Union"). The Commonwealth Court affirmed, 566 A.2d 653, and we granted review. The underlying facts are as follows.

Appellant, PAT, was created pursuant to the Second Class Port Authority Act of April 6, 1956, P.L. (1955) 1414, 55 P.S. § 551, *et seq.* In 1968, this Court, in *Port Authority of Allegheny County v. Amalgamated Transit Union*, 430 Pa. 514, 243 A.2d 433 (1968), ordered that arbitration be held to

resolve a dispute between PAT and the Union over the bargaining rights of PAT dispatchers, inspectors, district inspectors and instructors, that is, first level supervisors. One year later, in 1969, PAT and Local 85 arbitrated the issue. In particular, PAT and Local 85 sought an interpretation of Section 13.2 of the Second Class County Port Authority Act, *supra,* specifically to clarify whether incumbents in the job classifications listed above were "employees" entitled to union representation. In this connection, the relevant language of the then Section 563.2, as interpreted by the Board of Arbitration, stated:

If the authority acquires an existing transportation system, such of the employees of such transportation system, *except executive and administrative officers,* as are necessary for the operation thereof by the authority, shall be transferred to and appointed as employees of the authority subject to all the rights and benefits of this act.... (Emphasis added.)

Relying on the foregoing language, the Board of Arbitration, with Arbitrator Teple serving as the neutral arbitrator, concluded that first-level supervisors were covered "employees" and that the Port Authority was required to bargain with those employees' accredited representative, Local 85. As stated by Arbitrator Teple:

It seems plain beyond peradventure, considering this language that the reference to employees includes all personnel except the executive and administrative officers specifically excluded. *Having chosen to exclude two groups, and no others, in the Chairman's opinion it must be concluded that the State Legislature intended to extend the rights and benefits of the Act to all other employees, regardless of the functions they may perform or the extent to which those functions may be considered supervisory in nature.* Supervisors at a level below the executive and administrative officers, clearly were not excluded. (Emphasis added) (R. 59a–60a).

Arbitrator Teple's finding that the legislative intent was to include lower level supervisors was based on the Legislature's specific exclusion of only executive and administrative officers.

138

Arbitrator Teple further stated that the Pennsylvania Legislature was aware of the specific exclusion of supervisors from bargaining units within the terms of the National Labor Relations Act, 29 U.S.C. § 164(a) and § 152(11), which exclusion became law after the U.S. Supreme Court's decision in *Packard v. N.L.R.B.*, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947), but chose, instead, to exclude, under the Port Authority Act, only executive and administrative officers:

> The provision that the Authority shall deal with and enter into written contracts with its employees through accredited representatives, manifestly is one of the rights referred to in the language quoted above, and must be considered as extending to all employees other than those specifically excluded. (R. 60a).

The Board of Arbitration declined to supply a further exclusion to correct what it referred to as an "assumed omission" in the statute.

In 1970, the Pennsylvania Legislature created "meet and discuss" rights for "first level supervisors" under the Public Employee Relations Act, 43 P.S. § 1101.101, *et seq.* 43 P.S. § 1101.704 provides:

> Public employers shall not be required to bargain with units of first level supervisors or their representatives but shall be required to meet and discuss with first level supervisors or their representatives, on matters deemed to be bargainable for other public employees covered by this act.

However, Section 2001(3) of the Act, 43 P.S. § 1101.2001(3), preserved the bargaining rights enjoyed by all of PAT's employees, as follows:

> The rights granted to certain employees by the following Acts or parts thereof shall not be repealed or diminished by this Act:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (3) Section 13.2 of the Act of April 6, 1956 (P.L. 1414), known as the "Second Class County Port Authority Act" [55 P.S. Section 563.2].

Thus, the bargaining rights of the employees of the Port Authority of Allegheny County were not at all diminished by the passage of the Public Employee Relations Act.

Subsequently, the status of "first level supervisors" with the Port Authority was modified by the Pennsylvania Legislature. The Port Authority Act was amended effective July 2, 1986. In the amendments to Section 13.2, 55 P.S. § 563.2(a), the legislature eliminated the language relied upon by Arbitrator Teple. In particular, the amended statute *no longer contains any specific exceptions for executive and administrative officers.* Instead, the amended language provides:

The authority through its boards shall deal with and enter into written contracts with the employees of the authority through accredited representatives of such employees or representatives of any labor organization authorized to act for such employees concerning wages, salaries, hours, terms and conditions of employment, and pension or retirement provisions. . . .

The amended Act also defines "first level supervisors" but merely excludes them from the collective bargaining unit. In this regard, § 563.2(d) of the amended Port Authority Act now states:

*First-level supervisors shall not be included in bargaining units with other employees of the authority.* Incumbents holding first-level supervisory positions on the effective date of this subsection will be given the opportunity to continue in represented status or to terminate their bargaining unit status. Those who choose to continue in represented status shall retain the individual right to terminate their bargaining unit status at any time. All newly appointed first-level supervisors shall not be included in bargaining units with other employees of the authority. "First-level supervisor" shall mean the lowest level at which an employee functions as a supervisor. For the purpose of this section "supervisor" shall mean any individual having authority in the interest of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employees or responsibly to direct them or adjust their

grievances; or, to a substantial degree, effectively recommend such action, if, in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature, but calls for the use of independent judgment. In the event that an employee in a position defined as a "first-level supervisor" is removed from his or her position due to a layoff or other reduction in force, such employee may elect to return to the position he or she held immediately prior to becoming a "first-level supervisor." In all cases, such job placement will be made in accordance with full seniority. (Emphasis added.)

The amendments to the Port Authority Act simply require that certain supervisory positions in the former bargaining unit be completely taken out of the bargaining unit. First-level supervisors in those positions who so choose are "grandfathered" under the amended Port Authority Act and can continue to be represented by the union in the existing collective bargaining unit. That leaves the question of whether PAT must still bargain collectively at all with their first-level supervisors.

On January 25, 1989, the trial court ordered PAT to collectively bargain with "first level supervisors" through their authorized bargaining agent, Local 85. The court also held that this collective bargaining will still be required by the Second Class County Port Authority Act, 55 P.S. § 551, *et seq.* The order of the trial court was affirmed by the Commonwealth Court and it is from that which PAT appeals.

We granted allocatur because the issue raised by PAT touches directly on an earlier decision reached by this Court. For the reasons set forth below, we affirm.

In their argument to this Court, PAT reasons as follows:

1) The original Port Authority Act did not explicitly include first-line supervisors as employees with whom PAT had an obligation to collectively bargain. First-line supervisors were included with employees for collective bargaining rights under the Act only because of the arbitrator's decision. The 1986 amendment in question overruled the arbitrator's decision

because the right to collectively bargain never had been given clearly to first-level supervisors *by the Legislature*, but only by an arbitrator's interpretation of legislative intent, hence, the net effect of the amendment was to overrule the arbitrator's decision.

2) The Port Authority Act and the Public Employee Relations Act must be read in *pari materia*, and therefore, it was not necessary for the Legislature to repeat the language of the Public Employee Relations Act explicitly in the Port Authority Act to accomplish the result that first-level supervisors were to be relegated to meet and discuss status. Moreover, argues PAT, the Legislature never specifically granted to first-level supervisors their own bargaining unit, and they did not intend to, because there would then be no reason for the grandfather clause within the amendment to the Port Authority Act.

3) The intention of the Legislature is evidenced by the deletion made from the original proposal of the amendment, which deletion is underlined in the following: "First-level supervisors shall not be included in bargaining units with other employes of the authority *but shall be permitted to form their own separate bargaining unit.*" See the original version of House Bill 1876.

These arguments must be rejected. We think that the argument that the Public Employee Relations Act must be read in *pari materia* with the Port Authority Act is clearly wrong. It flies in the face of the very savings clause in the Public Employee Relations Act, cited above, which clearly preserves rights created under, *inter alia*, the Port Authority Act.

The rights created as a result of the arbitrator's decision in 1969 are fundamental, vested rights granted by the Port Authority Act as read by the arbitrator under directions from this Court. They cannot be revoked by the Legislature unless that is done explicitly. As the Statutory Construction Act, 1 P.C.S. § 1922, provides:

In ascertaining the intention of the General Assembly in the enactment of a statute, the following presumptions among others may be used:

\* \* \* \* \* \*

(4) That when a court of last resort has construed the language used in a law, the General Assembly in subsequent statutes of the same subject matter intend the same construction to be placed upon such language.

The Legislature certainly knew how to revoke such rights explicitly if they wanted to! See, § 1101.704 of the Public Employee Relations Act, cited above. They did not do so when they amended the Port Authority Act, even *sub silentio*. All the amended Act does is define first-level supervisors and provide that newly appointed supervisors cannot be in the same bargaining unit as other employees. Collective bargaining rights are not repealed.

We think that the legislative history is not helpful here because it is so ambiguous. With or without the language deleted from House Bill 1876, as quoted above, there is simply no clear intent expressed by the Legislature to repeal the collective bargaining rights of first-level employees under the Port Authority Act as amended. See, *Commonwealth v. Alcoa Properties, Inc.*, 440 Pa. 42, 269 A.2d 748 (1970).

Accordingly, the decision of the Commonwealth Court is affirmed.

FLAHERTY, J., files a dissenting opinion in which NIX, C.J., and ZAPPALA, J., join.

FLAHERTY, Justice, dissenting.

I dissent. The Port Authority of Allegheny County should not be required to collectively bargain with its first-level supervisors. The Public Employe Relations Act, 43 P.S. § 1101.704, expressly relegates first-level supervisors to "meet and discuss" status rather than bargaining status. Further, the Second Class County Port Authority Act, 55 P.S. § 563.-2(d), provides, "First-level supervisors shall not be included in bargaining units with other employes of the authority." The majority concludes that the latter provision allows first-level

supervisors to maintain their own bargaining unit, i.e., a bargaining unit separate from the one that represents other employees of the authority.

The Public Employe Relations Act and the Port Authority Act should, however, be read in *pari materia,* inasmuch as both statutes address the bargaining status of first-level supervisors. Viewed in this manner, the Port Authority Act's prohibition on including such supervisors in bargaining units with other employees is consistent with the Public Employe Relations Act's ban on providing anything more than meet and discuss status for units representing first-level supervisors. Construing these acts together, it is apparent that first-level supervisors do not have bargaining unit status. The decision of the Commonwealth Court, which held to the contrary, should be reversed.

NIX, C.J., and ZAPPALA, J., join in this Dissenting Opinion.