630 A.2d 1283

Heidi MALLOY, Appellant

v.

BOYERTOWN AREA SCHOOL BOARD, Boyertown Area School District, Gregory T. Unger, Betty Martin, Gayle V. Buckman, Donna Hoffman, Michael Kulp, Helen Moyer, Francis D. Sell, Jean L. Butt, Dr. John C. Crosby, Dr. Warren W. Moser and Alexander Construction Management, Inc.

Commonwealth Court of Pennsylvania.

Argued March 29, 1993.

Decided May 19, 1993.

Publication Ordered Aug. 19, 1993.

Henry J. Costa, Jr., for appellant.

Diane M. Tokarsky, for appellee Alexander Const. Management, Inc.

Andrew E. Faust, for all other appellees.

Before SMITH and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

This is an appeal by Heidi Malloy, a taxpayer, from an order of the Court of Common Pleas of Berks County denying a preliminary injunction against the Boyertown Area School District (school district) which sought to enjoin the execution of a contract with Alexander Construction Management (construction manager). Malloy's principal argument is that the school district entered into a non-bid contract and therefore did not comply with Article VII, Section 751 of the Public School Code (School Code), 24 P.S. § 7-751, which provides:

(a) All construction, reconstruction, repairs, maintenance or work of any nature, including the introduction of plumbing, heating and ventilating, or lighting systems, upon any school building or upon any school property, or upon any building or portion of a building leased under the provisions of section 703.1, made by any school district, where the entire cost, value, or amount of such construction, reconstruction, repairs, maintenance or work, including labor and material, shall exceed ten thousand dollars ($10,000), shall be done under separate contracts to be entered into by such school district with the lowest responsible bidder, upon proper terms after due public notice has been given asking for competitive bids.

The contract between the school district and the Construction Manager provided for a payment of $525,000 and certain reimbursable costs as well as payment for additional services.

Although this case involved a request for a preliminary injunction, the trial judge did not take evidence on the requisite elements for granting a preliminary injunction [1] or discuss them in his opinion. Rather, he decided on the merits that there was no requirement that the contract be executed only after compliance with the strict bidding procedures in Article VII, Section 751 of the School Code. In light of this unusual procedure, therefore, this court will address first the legal question of whether the trial court's conclusion that this contract could be made without bids was correct.

1. The often-stated prerequisites for a preliminary injunction are:

[F]irst, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. (citation omitted). Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right to relief is clear and the wrong is manifest, a preliminary injunction will not generally be awarded.

*City of Philadelphia v. District Council 33, American Federation of State, County & Municipal Employees, AFL–CIO,* 528 Pa. 355, 361, 598 A.2d 256, 259 (1991).

The general area of the law which requires government bodies entering into public contracts to do so by method of competitive bids has been the subject of much litigation.

■ On the one hand, the public policy of competitive bidding is designed to prevent fraud and favoritism and, most importantly, to protect the public fisc. *Doverspike v. Black,* 126 Pa.Commonwealth Ct. 11, 541 A.2d 1191 (1988). So important is this consideration that the very statute involved applies to contracts over $10,000. The provision for competitive bidding is also mandatory. *R. & B. Builders, Inc. v. School District of Philadelphia,* 415 Pa. 50, 202 A.2d 82 (1964). On the other hand, the statutes all contain a limitation that the contract be awarded to the lowest *responsible* bidder, and thus allow a certain limited discretionary evaluation by the authority involved. In addition, contracts with certain professionals (architects, engineers, certified public accountants) or "other personal services involving professional expert advice" have in some instances been specifically excluded by statute from the bidding process. *See, e.g.,* Section 1802(h)(5) of The County Code, 16 P.S. § 1802(h)(5).

Malloy's argument on this appeal proceeds as follows. The statute here involved, 24 P.S. § 7–751, contains no specific exceptions to the general rule requiring competitive bidding when the basic contract is for construction. Therefore, *Appeal of Belcastro,* 528 Pa. 29, 595 A.2d 15 (1991), interpreting The County Code, which contains the provision specifically exempting those contracts covering the services of "members of the medical or legal profession, registered architects, engineers, certified public accountants or other personal services involving professional expert advice," is not authority for the trial court's decision. Indeed, Malloy goes further. She argues that the specific exceptions which were present in The County Code examined in *Belcastro* demonstrate that the General Assembly knew how to make specific exceptions; thus, the absence of specific exceptions in the School Code is a clear indication that the legislature did not intend any exception to exist. This argument is compelling. When coupled with the obvious purposes of competitive bidding as outlined

above and the size of the contract involved, it must be seriously considered.

However, careful examination of the two statutes—The County Code in *Belcastro* and the School Code here—leads us to conclude that Malloy's argument is flawed.

The County Code interpreted in *Belcastro* is found at 16 P.S. § 1802, and that statute now states:

(a) All contracts for services and personal property where the amount there exceeds the sum of ten thousand dollars ($10,000) shall be written and shall, except as otherwise hereinafter specified, be made by advertising for bids.

\* \* \* \* \* \* .

(h) The contracts or purchases made by the commissioners involving an expenditure of over ten thousand dollars ($10,000) which shall not require advertising or bidding, as hereinbefore provided, are as follows:

\* \* \* \* \* \*

(5) Those involving services of members of the medical or legal profession, registered architects, engineers, certified public accountants or other personal services involving professional expert advice.

It is therefore obvious that the statute is all-encompassing. *All* contracts for services and personal property unless excepted by, for example, Section 1802(h)(5) for professional services, would be included in the requirement of competitive bidding. The portion of the School Code here involved is by no means as inclusive as the statute our Supreme Court considered in *Belcastro*. The School Code's provision at issue here is limited to one type of contract, that for "work.... upon any ... building," and thus is distinct from the service contracts to which certain exceptions are made in The County Code. In light of this analysis, the absence of the exceptions in the School Code statute loses its significance.

However, we do accept Malloy's argument that *Belcastro* is not authority for the trial court's decision because this statute is simply another statute which the General Assembly has

constructed in a fashion entirely different from The County Code.

■ There are two cases worthy of discussion. In *Stratton v. Allegheny County*, 245 Pa. 519, 91 A. 894 (1914), the Supreme Court held that the county commissioners were not required to put out for bids an architect's contract, despite the fact that there was no express exception to competitive bidding in the statute considered therein. The drawback in using this case as authority is that a "construction manager" is simply not an architect. The record indicates that an architect is already on this school construction job.

In the next case, *Hibbs v. Arensberg*, 276 Pa. 24, 119 A. 727 (1923), it was held that it was not necessary for a school district to ask for bids when a single inspector was hired on a per diem basis. We cannot accept this case as binding authority either, for there is certainly a material difference between a single inspector hired on a per diem basis, where the municipal entity can thereby control payment and performance, and a construction management team, where the team is hired for a fixed term and the municipal entity obligates itself under a fixed contract for $525,000.00 or more.

We are thus faced with a statute governing construction contracts, which is all-inclusive in that it applies to "work of any nature" and contains no exceptions for professional or personal services involving professional expert advice. Conversely, two previous cases, only one of which concerned the School Code, judicially engrafted certain exceptions to the requirement of competitive bidding. One of these cases involves an architect; the other an inspector. Under such circumstances, we are of the opinion that the safest and proper course is literally to follow the words of the statute and refrain from reading into the statute an exception which is just not there.

Another difficulty in this case would present itself if this court were to attempt to fashion a judicial exception rather than defer to the legislature. This case involves, at best, a contract with an organization (the construction manager)

which performs many of the supervisory duties of a general contractor. It is not a contract with what might be called a "pure" professional. We conclude that the legislature is in a better position to construct the terms of any such exception. *Cf. Belcastro.*

■ We also conclude that this contract itself is governed by the School Code's mandate of competitive bidding, guided as we are by the general principles announced by this Court in *Doverspike,* 126 Pa. Commonwealth Ct. 1, 5, 535 A.2d 1217, 1219 (1988):

> We, of course, recognize the public policy considerations which underlie the general requirement that public contracts be competitively bid, including the prevention of fraud and favoritism and protection of the public fisc. See *American Totalisator Co. v. Seligman,* 34 Pa.Commonwealth Ct. 391, 384 A.2d 242 (1977), aff'd, 489 Pa. 568, 414 A.2d 1037 (1980). Statutory requirements for public biddings should be liberally construed to effect these purposes. 1 Pa.C.S. § 1928(c). As a corollary, we believe that exceptions to competitive bidding requirements should be narrowly construed.

Hence, we are required to construe this statute liberally to give effect to its purpose. Such a construction leads to a determination that the construction manager contract is one for "work of any nature.... upon a school building," for it is certainly for work of some type, albeit not of manual labor, on the buildings, integral to their construction. This is entirely consistent with an interpretation that the work of a general contractor, which might consist only of engaging subcontractors and overseeing operations, is subject to competitive bidding requirements.

Thus, we conclude that it was a violation of 24 P.S. § 7-751 for the School District to execute the subject contract without following the process outlined for competitive bidding.

We now return to the difficulty presented by the failure of the parties and the trial judge to consider the other elements necessary for the grant of a preliminary injunction as outlined

8

above. It is clear from the record that no attention was accorded these elements. Rather, the court directed the parties to the ultimate issue of the important legal question which we have discussed. We therefore reverse and remand for another hearing at which time consideration can be given to these elements. After this hearing, if the trial judge is convinced an injunction should issue, he can construct an equitable decree which will take into account the interests of all of the parties.

## ORDER

AND NOW, this 19th day of May, 1993, the order of the Berks County Common Pleas Court, dated May 6, 1992, at Docket No. 6267 Equity 1992, is hereby reversed and remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.