657 A.2d 915

Heidi MALLOY, Appellee,

v.

BOYERTOWN AREA SCHOOL BOARD, Boyertown Area School District, Gregory T. Unger, Betty Martin, Gayle V. Buckman, Donna Buckman, Michael Kulp, Helen Moyer, Francis D. Sell, Jean L. Butts, Dr. John C. Crosby, Dr. Warren W. Moser and Alexander Construction Management, Inc., Appellants.

Supreme Court of Pennsylvania.

Argued Dec. 7, 1994.

Decided April 18, 1995.

Allan D. Goulding, Morrisville, Rosemary E. Mullaly, Doylestown, Jeffrey T. Sultanik, Lansdale, for B.A.S.D., et al.

Diane M. Tokarsky, Harrisburg, for Alexander Const. Co.

Henry J. Costa, Jr., Blue Bell, for H. Malloy.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

The sole issue presented in this case is whether a construction management contract for a public school construction project is subject to the competitive bidding requirement of the Public School Code at 24 P.S. § 7–751. For the reasons set forth below, we find that such a contract is not subject to

the statutory requirement and, on that basis, we reverse the order of the Commonwealth Court.

The Boyertown Area School Board privately awarded a $525,000 construction management services contract to Alexander Construction Management ("Alexander") to manage and coordinate the renovations and alterations to several buildings in the district. As a contract for construction management services, the contract did not obligate the Alexander team to perform any actual physical construction work. Appellee Heidi Malloy, a school district taxpayer, thereafter sought a preliminary injunction in the Berks County Court of Common Pleas to enjoin the execution of the Alexander contract, arguing that the Public School Code mandates that all construction contracts exceeding $10,000 must be submitted to the competitive bidding process in accordance with the following statutory language:

All construction, reconstruction, repairs, maintenance or work of any nature, including the introduction of plumbing, heating and ventilating or lighting systems, upon any school building or upon any school property, or upon any building or portion of a building leased under the provisions of section 703.1, made by any school district, where the entire cost, value, or amount of such construction, reconstruction, repairs, maintenance or work, including labor and material, shall exceed ten thousand dollars ($10,000), shall be done under separate contracts to be entered into by such school district with the lowest responsible bidder, upon proper terms after due public notice has been given asking for competitive bids.

24 P.S. § 7–751(a).

The trial court determined that the instant construction management contract was not subject to this provision of the Public School Code on the basis of longstanding Pennsylvania court decisions that have held that contracts for professional skill services are exempt from the competitive bidding process and that the Public School Code contains no express requirement that a construction management contract be submitted to competitive bidding. The Commonwealth Court reversed

the trial court's decision, finding that the Public School Code clearly and unambiguously requires that contracts for construction "work of any nature . . . upon any school building or upon any school property" are subject to the competitive bidding process and that the Public School Code provides no exception for this type of contract. *Malloy v. Boyertown Area School Board*, 158 Pa.Commw. 1, 630 A.2d 1283 (1993). This appeal followed.

This case presents the question of whether the competitive bidding requirement imposed by the Public School Code for construction "work of any nature . . . upon any school building or upon any school property" required the Boyertown School Board to submit for competitive bid the construction management contract at issue in this case. In *Hibbs v. Arensberg*, 276 Pa. 24, 119 A. 727 (1923), this Court was called on to interpret the 1919 version of the Public School code, Act of July 10, 1919, P.L. 889, § 1, which also mandated that "[a]ll construction, reconstruction, repairs or *work of any nature*, including the introduction of heating, ventilating, or lighting systems, *upon any school building or upon any school property*, made by any school district [be awarded to] the lowest responsible bidder" (emphasis supplied). In *Hibbs*, a construction inspector was selected to personally supervise the construction work but not to perform any of the physical construction work himself. This Court determined that although the statute required that contracts for actual, physical construction work must be subjected to the competitive bidding process, the statute did not require that a contract for a construction inspector's work be competitively bid. *Hibbs*, 276 Pa. at 30, 119 A. at 729. The Court reasoned that "unless directed by law to the contrary, [school district] authorities should be free to select the best available [personal] services." *Id.* The Court further stated that such a rule was necessary because the inspector's work went directly to the overall success of the project in that he:

> must make daily observation, as the work progresses, to see that the contract is fully complied with as to quantity and quality of material and workmanship. He is the owner's

special representative, and, unless [personally present] on the ground during all the working time, his employment is useless and the district should not be called upon to pay for it.

*Id.*

■ Notwithstanding the Commonwealth Court's express decision not to follow this Court's opinion in *Hibbs* (*see* 158 Pa.Commw. at 6, 630 A.2d at 1286), the Statutory Construction Act mandates that whenever this Court interprets particular language of a Pennsylvania statute, the General Assembly intends the Court's construction of the statute to govern the interpretation of the unamended language retained by a subsequently-enacted statute on the same subject matter. 1 Pa.C.S. § 1922(4). In *Hibbs,* this Court determined that the construction inspector's personal service contract need not be submitted to the competitive bid process even in light of the previously applicable statutory language that *"work of any nature* ... upon any school building or upon any school property" must be awarded to the lowest responsible bidder. *Hibbs,* 276 Pa. at 30, 119 A. at 729 (*interpreting* Act of July 10, 1919, P.L. 889, § 1 (emphasis supplied)). The successor statute to the law at issue in *Hibbs* contains this exact same language. *See* 24 P.S. § 7–751(a), *supra.*[1] Accordingly, in light of the dictates of the Statutory Construction Act, the language in the amended Section 7–751(a) providing that "work of any nature ... upon any school building or upon any school property" must be awarded to the lowest responsible bidder does not mean that *every* category of construction-

---

1. Indeed, the General Assembly has revisited this particular section of the Public School Code 15 times since *Hibbs* and left the applicable "work of any nature" language unchanged. *See* Act of May 4, 1990, P.L. 164, No. 38, § 1; Act of June 29, 1984, P.L. 438, No. 93, § 2; Act of February 4, 1982, P.L. 1, No. 1, § 3; Act of October 10, 1980, P.L. 924, no. 159, § 1; Act of July 13, 1979, P.L. 94, No. 41, § 1; Act of October 4, 1978, P.L. 1040, No. 236, § 1; Act of July 22, 1970, P.L. 541, No. 184, § 1; Act of December 30, 1959, P.L. 2061, § 1; Act of July 11, 1957, P.L. 775, § 2; Act of September 27, 1955, P.L. 651, § 2; Act of May 24, 1951, P.L. 397, § 1; Act of April 14, 1949, P.L. 459, § 1; Act of March 10, 1949, P.L. 30, § 751; Act of May 29, 1931, P.L. 243, § 16; Act of May 7, 1929, P.L. 1626, § 1; and Act of May 7, 1929, P.L. 1625, § 1.

related work on any school building or school property must be competitively bid. *See Port Authority of Allegheny County v. Local 85, Amalgamated Transit Union,* 533 Pa. 135, 141–142, 620 A.2d 1099, 1102 (1993) (right to collective bargaining judicially mandated pursuant to Port Authority Act incorporated into statute by operation of law since legislature failed to modify language of that statute after judicial decision was rendered which recognized that collective bargaining right).

Accordingly, having determined that the amended Public School Code does not prevent a school district from awarding certain personal service contracts without submitting them to the competitive bidding process, the remaining issue is whether the construction management contract at issue herein is sufficiently similar to the exempted contract in *Hibbs* (and other similar cases cited *infra*) so as to compel a similar result. The Commonwealth Court found *Hibbs* inapposite to the case at bar on the basis that a material difference exists between the *Hibbs* single inspector hired on a *per diem* basis where the inspector's cost and performance can be readily controlled and the instant construction management team hired for a fixed term where the team's cost and performance is subject to less stringent control. 158 Pa.Commw. at 6, 630 A.2d at 1286.

We believe, however, that the Commonwealth Court erred when it looked to the distinction between a *per diem* contract and a base payment contract in light of the longstanding judicial history in this Commonwealth to exempt personal service contracts requiring a certain degree of personal skill and professional expertise from the normal statutorily-required competitive bidding process. In addition to *Hibbs,* this Court has affirmed this professional skill exemption principle on more than one occasion. For example, in *Stratton v. Allegheny County,* 245 Pa. 519, 526–527, 91 A. 894, 896 (1914), this Court held that the statute requiring that contracts relating to city affairs be awarded to the lowest responsible bidder after advertisement, do not apply to a contract by a city for the employment of an architect for the erection of a public building. The Court based its holding on the notion

that "it has never been held ... that the [statutory competitive bidding requirements] apply in the making of contracts for the employment of attorneys, physicians, engineers, or others, involving professional skill." *Id.* (*quoting* Dillon on Municipal Corporations, § 1203).

In the instant matter, however, the Commonwealth Court found *Stratton* inapposite on the basis that the construction manager "is simply not an architect" and that the "record indicates that an architect is already on this school construction job." 158 Pa.Commw. at 6, 630 A.2d at 1286. The Commonwealth Court failed to discern that *Stratton* exempted architectural service contracts on the basis that such contracts required a certain degree of professional skill and expertise that is not quantifiable in the competitive bidding process and for which it is difficult, if not impossible, to assign a particular dollar figure. We fail to understand why the Commonwealth Court did not apply this reasoning to the facts in the instant matter.

Indeed, this Court's opinion in *In re 1983 Audit Report of Belcastro,* 528 Pa. 29, 595 A.2d 15 (1991), should have resolved any doubt that professional services were exempt from normal statutory competitive bidding requirements.[2] In *Belcastro,* we held that county commissioners' contracts for standardized testing services and for use of data processing software and hardware involved "professional expert advice," and thus fell within the exemption expressly written into the competitive bidding statute. 528 Pa. at 39, 595 A.2d at 20. However, notwithstanding the express competitive bidding exemption written into the *Belcastro* statute, this Court noted that "professional service exemptions to public contract bidding is common practice throughout the Commonwealth." *Id.* Faced with the task of guiding the lower courts in determining when

2. The Commonwealth Court also held *Belcastro* inapposite to the instant case on the basis that the Public School Code "is simply another statute which the General Assembly has constructed in a fashion entirely different from the County Code." 158 Pa.Commw. at 4–6, 630 A.2d at 1285–1286. We feel, however, that *Belcastro* is much more far-reaching than that, applying to "all those instances where competitive bidding is required." 528 Pa. at 39, 595 A.2d at 20.

competitive bidding is and is not required, the Court further stated that "[*Belcastro*] presents us with the opportunity to establish guidelines to be applied not only in the instant case, *but to all those instances where competitive bidding is [generally] required." Id.* (emphasis supplied).

In *Belcastro,* we defined exempt professional skill contracts as contracts "which involve quality as the paramount concern and require a recognized professional and special expertise." *Id.,* 528 Pa. at 41, 595 A.2d at 21. Based on that definition, we further stated that "where quality is of little concern, perhaps because the product or service varies little from company to company, competitive bidding should be required. . . . But, where quality of the service is the paramount concern, the service should be exempt from the bidding requirements found in [the statute]." *Id.*

Furthermore, for those contracts for which the unique nature of service is not the paramount concern, there exists no special relationship between the contractor and the public property owner. A public project's plumbing contractor, for example, is interested in his own bottom line and not necessarily whether the masonry contractor has met the cost and technical specifications required by the property owner. It is, therefore, wholly reasonable to require the selection of such contractors solely on the basis of the lowest responsible bid because no other service is required.

On the other hand, for those contracts for which the distinctiveness and quality of service is the paramount concern, there exists a special relationship between the property owner and the contractor. In these types of contracts, the contractor owes a special duty of loyalty to the property owner because the contractor in essence becomes the property owner's agent and, therefore, must act in good faith and always in the furtherance of the property owner's interests vis-a-vis the other contractors on the project. *See Hibbs, supra,* 276 Pa. at 30, 119 A. at 729 (construction inspector's work goes directly to the overall success of the project and in that capacity he acts as the owner's special representative). It would, there-

fore, be patently unreasonable to impose a statutory requirement which forces public property owners to select a party with whom a special duty of loyalty must exist by merely referencing the lowest responsible bid received. *See also* 1 Pa.C.S. § 1922(1) (the General Assembly does not intend a result that is unreasonable). The only reasonable implication that can be drawn from *Belcastro* and its related predecessors *Stratton* and *Hibbs*, therefore, is that notwithstanding the absence of an express statutory exemption, public contracts for professional services which involve quality as the paramount concern and require a recognized professional and special expertise are exempt from the normal statutory competitive bidding process.

■ Accordingly, the residual question remaining before us is whether the construction management contract at issue involves quality as the paramount concern, thereby requiring a recognized professional and special expertise, so as to be exempt from the competitive bidding requirement of the Public School Code. The construction management contract at issue requires the construction manager to perform construction management services in both the preconstruction phase and the construction phase. During the preconstruction phase, the construction manager's service is to include: (1) coordinating the schedules of the architect, owner and manager; (2) advising the owner of the separation of the project into various categories of work; and (3) developing schedules and providing the owner advice on when to purchase material and equipment. Reproduced Record at 14. The construction phase duties include: (1) the provision of administrative and management services to coordinate the work of the contractor; (2) the scheduling and conducting of meetings on administrative matters; (3) the recommendation of changes to the architect and owner; (4) the provision of advice on discrepancies in the drawings and specifications; and (5) assistance to the architect in evaluating the completion of the work of the contractors. Reproduced Record at 14. As such, we believe,

as did the trial court,[3] that the construction manager's duties require specialized business and technical judgment and professional skills and experiences. Moreover, much like the construction inspector in *Hibbs, supra,* 276 Pa. 24, 119 A.2d 727, the instant construction manager's work goes directly to the overall success of the project to see that the contract is fully complied with as to quantity and quality of material and workmanship. As such, the quality of the service the construction manager is to provide, rather than the cost of such service, is of paramount concern.

In short, the construction management contract at issue in this case falls within the long-recognized professional skill/personal service exception to the competitive bidding requirement as expressed by this Court in *Belcastro, Hibbs* and *Stratton*.[4] On this basis, we hold that the contract is exempt from the competitive bidding requirement of the Public School Code at 24 P.S. § 7–751(a). Accordingly, we reverse the order of the Commonwealth Court.

PAPADAKOS, J., did not participate in the decision of this matter.

MONTEMURO, Senior Justice, is sitting by designation.

---

3. We note that an appellate court is bound by a trial court's findings of fact which are adequately supported in the record. *In re White,* 506 Pa. 218, 222, 484 A.2d 763, 765 (1984).

4. We also note that the language of the statute itself suggests that the competitive bidding requirement is limited to contracts for physical construction labor only, not construction management advisory services because the "work of any nature" phrase upon which the Commonwealth Court's reasoning hinged is immediately modified only by examples of physical labor: "including the introduction of plumbing, heating and ventilating or lighting systems." 24 P.S. § 7–751(a). This view of the statute supports the result we today reach. *See also Hibbs,* 276 Pa. at 30, 119 A. at 729 (although the statute required that contracts for actual, physical construction work must be subjected to the competitive bidding process, the statute did not require that a contract for a construction inspector's work be competitively bid).