(text box: 1) NO. 5-00-0177

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

JOE SHIVELY, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee and ) St. Clair County.  

Cross-Appellant, )

v. ) No. 99-CH-875

)

BELLEVILLE TOWNSHIP HIGH SCHOOL )

DISTRICT NO. 201 and THE BOARD OF )

EDUCATION, BELLEVILLE TOWNSHIP )

HIGH SCHOOL DISTRICT NO. 201, )

)

Defendants, )

and )

)

KORTE CONSTRUCTION COMPANY, )

) Honorable

Defendant-Appellant and ) Patrick M. Young, 

Cross-Appellee. ) Judge, presiding.  

___________________________________________________________________________

JUSTICE RARICK delivered the opinion of the court:

The plaintiff, Joe Shively, brought an action in the circuit court of St. Clair County against defendants Belleville Township High School District No. 201 (School District), Leo Hefner, in his capacity as the superintendent of the School District, and the Board of Education, Belleville Township High School District No. 201 (Board).  Shively's complaint sought equitable estoppel, a preliminary injunction, and a permanent injunction.  Shively subsequently added a count for a declaratory judgment against the School District and defendant Korte Construction Company (Korte).  

The Board approved a project to renovate Belleville East High School and to construct a new Belleville West High School.  Hefner invited five firms to provide construction-management services for the project.  Two firms submitted proposals, and each made presentations to School District representatives.  Korte was selected as the construction manager.  Korte and the School District signed an agreement providing
 that the construction manager would be an agent for the School District.

During a bench trial, Shively voluntarily dismissed counts I, II, and III of his complaint, and Hefner was dismissed as a defendant.  With respect to the remaining count, Shively argued
 that the construction-management agreement between Korte and the School District was awarded without competitive bidding as required by section 10-20.21 of the School Code (105 ILCS 5/10-20.21 (West 1998)) and was therefore void.  Korte responded that a construction-management agreement was not the type of contract which is subject to the competitive-bidding requirements of section 10-20.21 and that such an agreement comes within the professional-services exception contained in section 10-20.21(i) of the School Code (105 ILCS 5/10-20.21(i) (West 1998)).

Doug Sitton, a civil engineer employed by the project's architect, testified that a "construction manager" deals with the construction schedule, cost-estimating, and "constructability," which he explained is the process of evaluating and analyzing how to construct a facility in the most cost-effective way, considering the availability of materials and the owner's schedule.  Sitton characterized the services provided by a construction manager as being "more like a professional service."

Brian Braun, an attorney who advised the School District in negotiating the terms of the construction-management agreement with Korte, testified that the construction-management agreement between the School District and Korte expressly recognized that the bidding process set forth in section 10-20.21 applies to contracts for construction, supplies, and materials, but Braun testified that the construction manager does not perform any of the trade contractors' work and does not furnish supplies or materials.  Braun testified that Korte was responsible for overseeing the trade contractors' performance but that Korte was not a "constructor" under the agreement.  Korte did not have a right to purchase materials.

Lorry Bannes, a civil engineer and a design-and-construction consultant, testified that there are three types of recognized project-delivery systems: (1) the traditional general-contractor delivery system, (2) the construction-manager-at-risk delivery system, and (3) the construction-manager-advisor delivery system.  With the general-contractor delivery system, the architect prepares the plans and specifications and the general contractor is then selected by competitive bidding where bidding is required.  Under the construction-manager-at-risk delivery system, the construction manager serves as the owner's consultant during the design phase but then becomes a "contractor" by providing the owner a lump sum or guaranteed maximum price to construct the work per the plans and specifications.  Under the construction-manager-advisor delivery system, the construction manager remains the owner's agent and adviser throughout the project.

Bannes testified that a construction manager, whether at-risk or as an advisor, provides various services involving professional skill, including cost-estimating, scheduling, "constructability," "value engineering," and life-cycle cost analysis.  Bannes described "value engineering" as a comparative analysis of the relative costs and values of different available options.  Bannes indicated that a construction manager provides expert advice on such things as how a particular design might impact the schedule, how design details can be handled to take advantage of the relative skills of particular trades, the relative availability of different building materials, and how to properly motivate the affected trades of the construction market to submit bids.  Bannes agreed that architects perform construction-management services, but in his experience, more general contractors perform as construction managers than do architects.  He did not necessarily think that any general contractor would be up to the task of serving as a construction manager, because it would require a general contractor who has been in the business and looked at competitive bids, knows how to write a contract, is good at supervision, and can share his knowledge in the early stages of design.

Bannes reviewed the School District/Korte agreement and concluded that it was clearly an agency form of agreement.  Bannes testified that construction management is regarded as a "professional skill or service" in the construction industry.

After initially rejecting Shively's contention that exception (i) to section 10-20.21 applied only to contracts with individuals and not corporations, the trial court found that the agreement between Korte and the School District was subject to the competitive-bidding requirements of section 10-20.21 and that the professional-services exemption did not apply.  The court found that nothing introduced by the parties would warrant a finding of any expertise above that of a general contractor.  Accordingly, the court found the contract void.

On appeal, Korte argues that a construction-management contract is not the type of contract subject to the bidding requirements set forth in section 10-20.21 of the School Code and that a contract for construction-management services is exempt from bidding under exception (i) to section 10-20.21 of the School Code.

Section 10-20.21 of the School Code places the following requirement on school boards:  

"To award all contracts for purchase of supplies, materials or work[,] or contracts with private carriers for transportation of pupils involving an expenditure in excess of $10,000 to the lowest responsible bidder, considering conformity with specifications, terms of delivery, quality[,] and serviceability, after due advertisement, except the following: (i) contracts for the services of individuals possessing a high degree of professional skill where the ability or fitness of the individual plays an important part ***."  105 ILCS 5/10-20.21 (West 1998).

Korte contends that the contract it signed with the School District was for construction-management services rather than general-contractor services.  Korte maintains that construction-management services are significantly different from construction work, the former being a professional activity which assists the owner with the planning, costing, and management of the project. 

In ruling that the contract between Korte and the School District was subject to the bidding requirements of section 10-20.21 and was not exempt under subsection (i), the trial court relied on 
dicta
 in 
East Peoria Community High School District No. 309 v. Grand Stage Lighting Co.
, 235 Ill. App. 3d 756, 601 N.E.2d 972 (1992).  In 
Grand Stage Lighting Co.
, the court addressed the issues of whether a school district was required to ensure that its general contractor provided a payment bond to cover its subcontractors and whether the school district could void the contract for a failure to comply with the bidding statute.  Before reaching these issues, the court found: "As a preliminary matter, [the general contractor] was a general contractor even though it styled itself a 'construction manager.'  It hired subcontractors and provided no unique services."  
Grand Stage Lighting Co.
, 235 Ill. App. 3d at 759, 601 N.E.2d at 974.  

Grand Stage Lighting Co.
 does not support the trial court's ruling.  The recitation of facts in 
Grand Stage Lighting Co.
 provides no details regarding the nature of the contractor's duties and obligations.  
The court found that the contractor performed no unique services, and we presume that the facts support such a finding, but in the absence of a detailed discussion of the nature of the contractor's duties under the contract, 
Grand Stage Lighting Co.
 provides little guidance in the case at bar.  Deciding whether a contract falls within the professional-services exception is necessarily a fact-driven inquiry.  To the extent there were factual findings in 
Grand Stage Lighting Co.
, is clearly distinguishable.  In the present case, Korte was hired to provide full agency and fiduciary services to the School District, and the trade contractors bid directly with the School District, in compliance with the bidding statute.

Other cases have addressed the issue of whether a contract had to be bid pursuant to the relevant competitive-bidding statute or whether it was exempt from bidding by virtue of a professional-services exemption.

In 
Hassett Storage Warehouse, Inc. v. Board of Election Comm'ns for the City of Chicago
, 69 Ill. App. 3d 972, 387 N.E.2d 785 (1979), Hassett Storage Warehouse, Inc. (Hassett), filed suit against the board of election commissioners.  Hassett alleged that the board, in granting a contract for the storage and cartage of election equipment, failed to comply with the bidding requirements of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 8-10-1 
et seq.
).  The trial court dismissed Hassett's complaint, and Hassett appealed.  The issue on appeal was whether the contract in question fell within the professional-services exception to the competitive-bidding statute.  The court in 
Hassett Storage Warehouse, Inc.
 noted:  

"The contract in this case, which was attached to the complaint as an exhibit[,] concerned, 
inter alia
, the safe storage of about 1300 voting machines; the safe delivery of the voting machines and other election equipment to polling places for use on election days; the collection of voting machines and other election equipment from the polling places and their return to the storage facilities after an election; the pick up of registration binders, ballots[,] and other election equipment from Central Board offices, receiving stations[,] and other locations and their safe delivery to the precincts for use on election days; and the collection of election equipment from abandoned polling places and delivery to new polling places where required on election days.  The contract specifications total 11 pages, and since there are six elections during the term of the contract[,] the aforementioned obligations must be performed at least six times.  Even if the statute requiring bids is strictly construed, this contract places a tremendous responsibility on the contractor for the efficient administration of the electoral process.  It requires that trust and confidence be placed in the performer of the contract and requires near perfect performance under extreme time pressures.  The failure of a contractor to perform his obligations properly could disenfranchise registered voters in an area and do irreparable damage to an election.

By its terms, this contract is one where 'the ability or fitness of the individual plays an important part ***.' "  
Hassett Storage Warehouse, Inc.
, 69 Ill. App. 3d at 981-82, 387 N.E.2d at 792.

The professional-services exemption in 
Hassett Storage Warehouse, Inc.
 is identical to the one in the case at bar: " 'services of individuals possessing a high degree of professional skill where the ability or fitness of the individual plays an important part.' "  
Hassett Storage Warehouse, Inc.
, 69 Ill. App. 3d at 981, 387 N.E.2d at 792 (quoting section 8-10-4 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 8-10-4 (now 65 ILCS 5/8-10-4 (West 2000)))).

In 
Compass Health Care Plans v. Board of Education of the City of Chicago
, 246 Ill. App. 3d 746, 617 N.E.2d 6 (1992), Compass Health Care Plans (Compass), a health-maintenance organization (HMO), filed a complaint against the Board of Education of the City of Chicago.  The complaint sought 
mandamus
 or declaratory relief to require the board to comply with the competitive-bidding provisions of the School Code in the award of contracts to HMOs for the provision of medical benefits to employees of the school system.  The court denied the board's motion to dismiss, finding that the contract in question did not fall within the professional-services exception because it did not involve the services of medical-care providers.  In affirming the trial court, the court in 
Compass Health Care Plans
 found that the contract in question was not for the direct furnishing of medical services but that it was merely a contract for the administration of an employee health-care program in which the employees select their own medical providers from a list of hospitals and doctors associated with the HMO.  The court further found that the board's decision to contract with certain HMOs and to discontinue contracts with others was not based upon the professional skills of the HMOs or the health-care providers associated with the HMOs.  Rather, the court found that the contracts were awarded based upon the number of enrollees in each of the HMO plans offered to the employees.

In 
American Health Care Providers, Inc. v. County of Cook, 
265 Ill. App. 3d 919, 638 N.E.2d 772 (1994), the county sought to obtain health-care coverage for its employees.  The county hired a consultant to determine a "request for proposals" to American HMO and 25 other companies.  The request for proposals generally requested price quotations and advised the bidders that the contract would be awarded by the county board.  American HMO submitted a proposal to the consultant, but the consultant did not conduct any negotiations with American HMO.  Ultimately, the contracts were awarded to other HMOs.  American HMO brought suit, arguing,
 inter alia
, that the county failed to competitively bid the contracts, as required by the Counties Code (55 ILCS 5/1-1001 
et seq.
 (West 1992)) and the county's purchasing ordinance.  The trial court dismissed American HMO's complaint, and American HMO appealed, arguing, 
inter alia
, that the trial court erred in finding that the health-care contracts were exempt from the competitive-bidding requirements by virtue of the professional-services exception contained in the relevant bidding laws.  The court in 
American Health Care Providers, Inc.
 affirmed the trial court's dismissal based upon the professional-services exemption to the bidding laws, which exempted from competitive bidding those contracts that were for "the services of individuals possessing a high degree of professional skill where the ability or fitness of the individual plays an important part."  
American Health Care Providers, Inc.
, 265 Ill. App. 3d at 931, 638 N.E.2d at 781.  The court in 
American Health Care Providers, Inc.
 distinguished 
Compass Health Care Plans
, noting that there were myriad insurance coverages and types of direct service providers from which the county needed to choose a comprehensive health-care plan.

Each of these decisions reviewing the professional-services exception to bidding statutes focused on the nature of the services provided.  Where the services require the exercise of professional and significant business judgment in providing important services on behalf of the government body, then the award of those contracts is exempt from the competitive-bidding process pursuant to the relevant professional-services exception.

The contract in the present case required Korte to (1) advise the School District on site selection and on the selection of materials, building systems, and equipment, (2) make recommendations regarding the availability of materials and labor and advise on the costs of alternative materials and systems, (3) update cost estimates and recommend corrective action if the costs might exceed the budget, (4) make recommendations whenever design details might adversely affect costs, schedule, or constructability, (5) advise on how to divide the construction work among the bid packages, (6) assist the School District in selecting special consultants and testing laboratories, (7) analyze the types and amounts of labor needed, review the availability of labor for critical aspects of the project, and make recommendations accordingly, (8) analyze the contractors' bids and make recommendations to the School District on contract awards, (9) assist the School District in advertising for bids and publishing the specifications, (10) make recommendations to the School District and the architect for corrective action if the construction falls behind schedule, (11) make recommendations to the School District when a contractor is not performing satisfactorily, (12) develop cash-flow reports and forecasts and advise the School District regarding variances between actual and estimated or budgeted costs, (13) review contractor pay applications and certify amounts due, (14) assist the architect in resolving contractor requests for interpretations, and (15) review and evaluate contractor claims.

After carefully reviewing the contract and Korte's duties and obligations thereunder, we find that the services Korte was hired to provide go well beyond those which are normally provided by a general contractor.  Korte was hired to serve as an advisor and consultant to the School District and was vested with considerable discretion in managing all phases of the project.  The services Korte was hired to provide require a high degree of professional skill where the ability or fitness of the individual plays an important part.  Thus, the professional-services exemption contained in subsection (i) applies, and the School District was not required to bid the contract.

We find support for our position in the approach taken by other jurisdictions in determining whether construction-management contracts are exempt from the relevant competitive-bidding statutes.  "The overwhelming majority of jurisdictions which have addressed the issue have concluded that construction management contracts which do not call for the furnishing of equipment, building labor[,] or materials are not subject to competitive bidding statutes."  
McMaster Construction, Inc. v. Board of Regents of Oklahoma Colleges
, 934 P.2d 335, 339 (Okla. 1997).  The case of 
Malloy v. Boyertown Area School Board
, 540 Pa. 308, 657 A.2d 915 (Pa. 1995), is particularly instructive.  In 
Malloy
, the Boyertown Area School Board awarded a construction-management contract to Alexander Construction Management, Inc. (Alexander), to manage and coordinate the renovations and alterations to several buildings in the district.  The contract did not require Alexander to perform any actual physical work.  Heidi Malloy, a school district taxpayer, sought to enjoin the execution of the contract because it was not awarded by competitive bidding as required by the Public School Code.  The trial court ruled that the contract was not subject to the competitive-bidding requirement of the Public School Code on the basis of long-standing Pennsylvania court decisions that have held that contracts for professional-skill services are exempt from the competitive-bidding process.  

In upholding the trial court's ruling, the Supreme Court of Pennsylvania noted the jurisdiction's long-standing history of exempting from the normal statutorily required competitive-bidding process those personal-service contracts requiring a certain degree of personal skill and professional expertise.  The court defined exempt professional-skill contracts as contracts " 'which involve quality as the paramount concern and require a recognized professional and special expertise.' "  
Malloy
, 540 Pa. at 315, 657 A.2d at 919 (quoting 
In re 1983 Audit Report of Belcastro
, 528 Pa. 29, 41, 595 A.2d 15, 21 (1991)).  Particularly relevant to the present case is the following language:

"[F]or those contracts for which the distinctiveness and quality of service is the paramount concern, there exists a special relationship between the property owner and the contractor.  In these types of contracts, the contractor owes a special duty of loyalty to the property owner because the contractor in essence becomes the property owner's agent and, therefore, must act in good faith and always in the furtherance of the property owner's interests vis-a-vis the other contractors on the project."  
Malloy
, 540 Pa. at 315, 657 A.2d at 919.

The court then reviewed some of the duties required of the construction manager under the contract.  Those duties included coordinating the schedule of the architect, owner, and manager; advising the owner on the separation of the project into various categories of work; developing schedules and advising the owner on when to purchase material and equipment; providing administrative and management services to coordinate the work of the contractor; recommending changes to the owner and architect; scheduling and conducting meetings on administrative matters; providing advice on discrepancies in the drawings and specifications; and assisting the architect in evaluating the completion of the contractors' work.  The court concluded that the construction manager's duties required specialized business and technical judgment and professional skills and expertise and that the construction manager's work went directly to the overall success of the project to see that the contract was fully complied with as to the quantity and quality of materials and workmanship.

The duties required of Alexander are very similar to those required of Korte.  Korte's duties, as did Alexander's, require specialized business and technical judgment, and Korte's work goes directly to the overall success of the project.  The same reasoning supporting the 
Malloy
 court's holding that the Alexander contract fell within Pennsylvania's judicially created professional-services exception supports our determination that the School District's contract with Korte falls within the professional-services exemption in section 10-20.21(i) of the School Code's competitive-bidding requirement.

We next address Shively's cross-appeal, wherein he argues that the trial court erred in ruling that the term "individuals" as used in section 10-20.21(i) includes corporations.  Shively contends that the language of the statute is clear and unambiguous and that the exemption applies only to contracts with individuals, not corporations.

The cardinal rule of statutory construction is to ascertain and give effect to the true intent and meaning of the legislature.  
Cummins v. Country Mutual Insurance Co.
, 178 Ill. 2d 474, 687 N.E.2d 1021 (1997).  Exception (i) in section 10-20.21 applies to "contracts for the services of individuals possessing a high degree of professional skill."  105 ILCS 5/10-20.21(i) (West 1998).  A careful reading of the statute demonstrates that the term "individuals" refers to the ones performing the service, not the ones with whom the contract is made.  Many individuals offering professional services, such as doctors and lawyers, do business as corporations.  To adopt Shively's interpretation of subsection (i) would lead to the result that contracts for the services of individuals doing business as sole proprietorships would be exempt from the bidding requirement, but those doing business as corporations would have to comply.  A statute should not be construed to produce an absurd, unjust, or unreasonable result.  
In re Application of County Collector of Du Page County for Judgment for Taxes for Year 1993
, 187 Ill. 2d 326, 718 N.E.2d 164 (1999).  

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part; cause remanded.  

MAAG, P.J., and HOPKINS, J., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 05/10/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.