John S. Robb, Counsel Unified School District No. 373 110 E. Broadway, Box 544 Newton, Kansas 67114-0544
Dear Mr. Robb:
As legal counsel for Unified School District No. 373, Harvey County (Newton), you request our opinion regarding the obligation of a unified school district to obtain bids when utilizing the construction manager at risk method for constructing a school building. Specifically, you ask: 1. whether a provision in a construction manager at risk agreement that obligates the construction manager to award subcontracts to the lowest responsible bidder on each bidding package meets a school district's obligations under K.S.A. 2007 Supp. 72-6760 when the construction manager is allowed to submit sealed bids on each bid package; 2. whether a board of education may authorize a construction manager at risk to enter into on behalf of the school district contracts with subcontractors who are lowest responsible bidders without violating K.S.A. 2007 Supp. 72-6760; and 3. whether accepting a bond from only the construction manager rather than from each subcontractor performing the construction work complies with K.S.A. 60-1111.
You explain that under the construction manager at risk method, the school district will retain an architectural firm to develop the design and retain a separate construction manager to perform services under a three-stage contract, as set forth below:
Phase 1: Delivery of pre-construction services — The construction manager develops for the owner school district, in parallel with the architect's design work, preliminary cost and schedule estimates for the proposed construction work. The school district pays the construction manager a fixed fee for these services;
Phase 2: Development and submittal of a guaranteed maximum priceproposal — After the construction drawings are completed, sealed by the architect, and submitted to the State Board of Education for approval, the construction manager must develop and submit to the school district a guaranteed maximum price for the proposed construction work. The construction manager's proposal must remain open for at least 45 days, and must be accepted before the school district is obligated to pay any construction costs. The district may choose to reject the guaranteed maximum price proposal and to terminate the construction management contract for its convenience without further obligation, other than payment of an equitable sum for preconstruction plan services; and
Phase 3: Administration of the construction services — If the school district elects to proceed and accepts the guaranteed maximum price proposal (putting the construction manager "at risk" for construction costs), the physical construction work is performed by trade contractors operating under subcontract with the construction manager. After acceptance of the guaranteed maximum price proposal, the construction manager must develop bid packages and solicit and obtain competitive bids for each bid package valued at more than $20,000. A typical school project may include as many as 20 bid packages. The construction manager is allowed to compete with other contractors and submit a sealed bid for any bid package. The construction manager must deliver the sealed bids for each bid package to the school district, which will open the bids in public and, following consultation with the architect and construction manager, determine for each bid package which contractor is the lowest responsible bidder. The contract between the school district and the construction manager requires the construction manager to award the subcontract for each bid package to the lowest responsible bidder.
Obligations Under K.S.A. 2007 Supp. 72-6760
The purposes of competitive bidding statutes are to ensure competition, save public funds, and guard against favoritism, improvidence, and corruption.[1] To accomplish these goals, the Legislature has prescribed that a unified school district obtain sealed proposals for designated expenditures involving an amount greater than $20,000. K.S.A. 2007 Supp. 72-6760 states:
 "(a) Except as provided by this section and K.S.A. 72-6760b, no expenditure involving an amount greater than $20,000 for construction, reconstruction or remodeling or for the purchase of materials, goods or wares shall be made by the board of education of any school district except upon sealed proposals, and to the lowest responsible bidder.
 "(b) The provisions of subsection (a) do not apply to expenditures by a board of education for the purchase of:
 "(1) Services. . . ."[2]
Traditionally, the design-bid-build system is initiated in construction projects.
 "This method generally has the owner forming separate contracts for the design and the construction project phases. A design professional is hired to translate the owner's needs into an overall design. The designer hires subcontractors to provide engineering and other specialty services. The owner uses the overall design as the foundation for entering into a separate contract with the general contractor who in turn is responsible for coordination of the construction work, performed primarily by trade contractors. The owner usually retains the design professional to oversee the progress of the work and to address any questions arising under the construction project process. The delivery system anticipates that a completed design will be turned over for pricing by one general contractor. If the project is a public work, the general contractor will generally select the lowest bidder following a public bid."[3]
The design-bid-build system tends to result in longer project durations as construction is generally delayed until the project's design is complete. Costs at the outset are based on estimates that may be subject to substantial increases to the owner when volatile circumstances occur during construction.
 "The disadvantages of the traditional design-bid-build system led to the use of new delivery systems. One such system is the Construction Management (CM) approach to building or management of a construction project. Construction management is generally viewed as the provision of project management services directly to the project owner. There are two basic types of construction managers.
 "The first type, the agency construction manager, does not control the means and methods of any of the contractors, subcontractors or their employees, does not subcontract with subcontractors or suppliers, and does not assume responsibility for the construction work itself. In this context, an owner will either contract directly with a general or prime contractor who enters into subcontracts and is responsible for delivering the completed work; or the owner will contract directly with multiple contractors who perform the work."[4]
 "The [agency construction manager] acts as the owner's principal agent in the management of the construction project and is responsible to the owner for managing the planning, design, construction and post-construction phases, or portions thereof, and represents the interests of the project in dealings with other construction professionals, and with other public and private entities."[5]
The Kansas Court of Appeals has reviewed a school district's obligations under K.S.A. 2007 Supp. 72-6760 when entering into a contract with an agency construction manager. In D-1 Construction, Ltd. v. Unified SchoolDistrict No. 229,[6] a unified school district sought to employ an agency construction manager who would: develop detailed construction plans, detailed schedules, and detailed cost analyses; establish bidding qualifications, solicits bids, and make recommendations for the award of contracts or the rejection of bids; supervise and coordinate the various contractors once construction began; and conduct inspections and make recommendations to the architect regarding final inspection.[7] The agency construction manager was not allowed to bid on any of the bid packages.[8] The Court determined that the agency construction manager provides "services." "The services provided by [the agency construction manager] in the management services contract are not covered by K.S.A. [2007] Supp. 72-6760."[9] This finding is consistent with the opinions of the courts of several other states.[10]
 "The second type [of construction manager], the construction manager at risk, enters into supply and subcontract agreements and assumes the risk for delivery of the project. There is little difference between the construction manager at risk and a general contractor except that a construction manager at risk may advise the owner in the pre-construction phase of the project, such as assisting the owner with planning, architect selection, etc. Once the construction project commences, the at-risk construction manager moves into the role of the general contractor. This model is similar to the traditional design-bid-build approach with one distinction: the at-risk CM is often involved in the design of the project which provides an added expertise and understanding of the project."[11]
 "The construction manager at risk entails a commitment by the construction manager to deliver the project within a guaranteed maximum price. The construction manager at risk acts as consultant to the owner during the development and design phases, but as the equivalent of a general contractor during the construction phase. When the construction manager is bound to a guaranteed maximum price, the most fundamental character of the relationship is changed. In addition to acting in the owner's interest, the construction manager also protects him/herself."[12]
In City of Inglewood-Los Angeles County Civic Center Authority v. ArgoConstr. Co,[13] the California Supreme Court reviewed whether a "management contract" for construction of a $12,000,000 civic center project is subject to a statute requiring any contract for a construction project exceeding $6,500 be awarded to the lowest responsible bidder. The management contract obligated the contractor "to contribute his practical expertise during the development of the working drawings, and subsequently apply this expertise during construction, in order to achieve maximum economies."[14] The contractor was expected to provide cost estimates during development of the drawings to determine whether the project was within budget, thereby allowing the early phases of construction to proceed prior to completion of all of the drawings, saving time in the total building process.[15] "The management contractor performs none of the construction itself unless he is awarded a separate contract therefor as the lowest responsible bidder in subsequent bidding under the traditional `lump sum' bidding procedures."[16] The Civic Authority maintained that the contract was one for services as a consultant and supervisor-manager rather than a contract for a construction project.[17] The Court took the view that:
 "It is true that the management contractor was to perform services and to lend his experience and expertise in the preparation of the final plans, and in that respect may be likened to an engineer or an architect whose services may be procured without strict compliance with competitive bidding. However, our review of the other duties and obligations which were required of the management contractor in this case, including his guarantee of the outside price based on the subcontract bids, persuades us that the management contracting procedure as proposed and followed here is too closely akin to traditional lump sum general construction contracting to be held exempt from the statutory competitive bidding requirements. To hold otherwise as a broad principle would open the door to possible favoritism, fraud or corruption in the letting of other public construction contracts."[18]
The contract reviewed in City of Inglewood-Los Angeles County CivicCenter Authority is remarkably similar to the proposal presented by Unified School District No. 373, Harvey County (Newton). Both the contract and the proposal require the construction manager to provide his expertise during preparation of the final plans, develop a guaranteed maximum price for the proposed construction work, and allow the construction manager to bid on subcontracts. Likewise, the obligation to obtain bids by the Civic Center Authority and Kansas school districts appears to be similar. The same concerns expressed by the California Supreme Court arise when reviewing the school district's proposal. Therefore, a unified school district is obligated under K.S.A. 2007 Supp. 72-6760 to submit to competitive bidding an agreement for the employment of a construction manager at risk when the expenditure exceeds $20,000.
This conclusion is buttressed when reviewing other acts adopted by the Kansas Legislature. The Bioscience Authority Act,[19] the Kansas Alternative Project Delivery Building Construction Procurement Act,[20] and the University Research and Development Enhancement Act[21] authorize the Bioscience Authority, state agencies or state educational institutions, and the Kansas Board of Regents, respectively, to authorize or enter into contracts for employment of construction managers at risk.[22] The Acts include exemptions from the state competitive bidding statutes.[23] "In construing statutes and determining legislative intent, several provisions of an act or acts,in pari materia, must be construed together with a view of reconciling and bringing them into workable harmony if possible."[24] Based on the case law, the construction manager at risk method is subject to competitive bidding requirements. The Kansas Legislature has recognized this restriction and, when expressly allowing the construction manager at risk method, provided an exemption from bidding requirements. No such exemption is provided in K.S.A. 2007 Supp. 72-6760.[25]
The fact that a construction manager at risk agreement has been entered into pursuant to K.S.A. 2007 Supp. 72-6760 does not absolve the school district from meeting the obligations of K.S.A. 2007 Supp.72-6760 when contracts are awarded to subcontractors. As previously noted, the purposes of the bidding statute are to ensure competition, save public funds, and prevent favoritism, improvidence, and corruption. Under K.S.A. 2007 Supp. 72-6760, expenditures are made to the "lowest responsible bidder." In determining who is the lowest responsible bidder, a party exercises discretion and judgment, weighing factors other than the lowest price in making the determination.[26] Allowing a potential bidder to exercise this discretion would seem to run counter to the purposes of the bidding statute. It is reasonable for a school district to weigh input from a construction manager at risk in determining whether a bidder is "responsible." However, given the purposes of the bidding statute, the unified school district is the entity responsible under K.S.A. 2007 Supp. 72-6760 for ultimately determining which subcontractor is the lowest responsible bidder. This obligation may not be conferred upon a construction manager at risk who is allowed to submit bids.
K.S.A. 2007 Supp. 72-6760 further directs the manner in which expenditures of school funds are to be made. "A statute must be interpreted in the context in which it was enacted and in light of the legislature's intent at that time."[27] As originally enacted, the statute provided that "[n]o expenditures . . . shall be made by the board, except in accordance with the provisions of a written contract, and no contract involving expenditures for construction or purchase of materials, goods or wares . . . shall be made except upon sealed proposals, and to the lowest responsible bidder."[28] By requiring that a written contract be in place, we believe that the Legislature intended that the written contract be between the school district and the lowest responsible bidder. The "written contract" requirement was removed in 1982[29] as it was viewed as being onerous, given the requirements of the Kansas Cash Basis Law and the practice of completing purchase orders.[30] The statute continues to require that the expenditure be made by the board to the lowest responsible bidder. The original intent of the provision has not been changed. The Legislature simply has not contemplated a situation where the expenditure is made by the school district to the lowest responsible bidder through a third party.
Bond Requirements Under K.S.A. 60-1111
K.S.A. 60-1111 states in part:
 "(a) Bond by contractor. Except as provided in this section, whenever any public official, under the laws of the state, enters into contract in any sum exceeding $100,000 with any person or persons for the purpose of making any public improvements, or constructing any public building or making repairs on the same, such officer shall take, from the party contracted with, a bond to the state of Kansas with good and sufficient sureties in a sum not less than the sum total in the contract, conditioned that such contractor or the subcontractor of such contractor shall pay all indebtedness incurred for labor furnished, materials, equipment or supplies, used or consumed in connection with or in or about the construction of such public building or in making such public improvements.
 "A contract which requires a contractor or subcontractor to obtain a payment bond or any other bond shall not require that such bond be obtained from a specific surety, agent, broker or producer. A public official entering into a contract which requires a contractor or subcontractor to obtain a payment bond or any other bond shall not require that such bond be obtained from a specific surety, agent, broker or producer."
The general purpose of K.S.A. 60-1111 is to protect public work projects from the attachment of mechanics' liens.[31] "The language of the statute allows a person who is due any sum for supplying labor or materials to a contractor or subcontractor to bring an action on the bond within six months after the project is completed."[32] The public works bond protects parties in privity with the owner, contractor, or the subcontractor of the contractor.[33] The bond required by K.S.A.60-1111 is mandatory, and there is no authority for a waiver of that requirement by any governing body or any public official.[34]
In determining whether accepting a bond from the general contractor, without accepting a bond from each subcontractor performing the construction work, suffices for meeting the requirements of K.S.A.60-1111, we review the rules of statutory construction.
 "It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in it."[35]
The obligation to obtain a public works bond under K.S.A. 60-1111 is clearly triggered when a public official enters into a contract in any sum exceeding $100,000 with any person for construction of a building. The plain language of the statute obligates the official to "take,from the party contracted with, a bond to the state of Kansas. . . ."[36] To comply with K.S.A.60-1111, a unified school district is required to obtain a public works bond from each party with whom the school district has contracted for the construction of a building when the amount contracted for exceeds $100,000. A unified school district is not required to obtain a public works bond from each subcontractor when there is no contract between the school district and the subcontractor.
In review, a unified school district is obligated under K.S.A. 2007 Supp. 72-6760 to submit to competitive bidding an agreement for the employment of a construction manager at risk when the expenditure exceeds $20,000. The fact that a construction manager at risk agreement has been entered into pursuant to K.S.A. 2007 Supp. 72-6760 does not absolve the school district from meeting the obligations of K.S.A. 2007 Supp. 72-6760 when contracts are awarded to subcontractors. Given the purposes of the bidding statute, the unified school district is the entity responsible under K.S.A. 2007 Supp. 72-6760 for ultimately determining which subcontractor is the lowest responsible bidder for each bidding package when the construction manager at risk is allowed to submit bids on bidding packages. The Legislature simply has not contemplated a situation where the expenditure is made by the school district to the lowest responsible bidder through a third party. To comply with K.S.A. 60-1111, a unified school district is required to obtain a public works bond from each party with whom the school district has contracted for the construction of a building when the amount contracted for exceeds $100,000. A unified school district is not required to obtain a public works bond from each subcontractor when there is no contract between the school district and the subcontractor.
Sincerely,
 Stephen N. Six Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
SNS:MF:RDS:jm
[1] Sutter Bros. Constr. Co. v. City of Leavenworth, 238 Kan. 85, 92
(1985).
[2] The exceptions listed in subsections (b)(2) through (b)(9) of K.S.A. 2007 Supp. 72-6760 are not applicable to the proposed project. Additionally, there is no indication that the school district intends to use the reverse auctioning electronic procurement process authorized in K.S.A. 72-6760b.
[3] 5 Stein Construction Law § 21.03[1] (2007).
[4] 5 Stein Construction Law § 21.03[2] (2007).
[5] Construction Management Association of America, What IsConstruction Management, http://cmaanet.org/cm_is.php (March 11, 2007).
[6] 14 Kan.App.2d 245 (1990).
[7] D-1 Construction, Ltd. v. Unified School District No. 229,14 Kan.App.2d 245, 246 (1990).
[8] Id.
[9] Id.
[10] See Shively v. Belleville Township High Sch. Dist. No. 201, 769 N.E.2d 1062, 1068-70 (Ill.App. 3d 2002).
[11] 5 Stein Construction Law § 21.03[2] (2007).
[12] Construction Management Association of America, What IsConstruction Management, http://cmaanet.org/cm_is.php (March 11, 2007).
[13] 500 P.2d 601 (Cal. 1972).
[14] City of Ingleweood-Los Angeles County Civic Center Authority v.Argo Constr. Co., 500 P.2d 601, 603 (Cal. 1972).
[15] Id.
[16] Id.
[17] Id. at 604.
[18] Id. (internal citations omitted).
[19] K.S.A. 2007 Supp. 74-99b01 et seq.
[20] K.S.A. 2007 Supp. 75-37,141 et seq.
[21] K.S.A. 2007 Supp. 76-777 et seq.
[22] K.S.A. 2007 Supp. 74-99b16; 75-37,143; 76-786.
[23] K.S.A. 2007 Supp. 74-99b16(b); 75-37,143; 76-786(b).
[24] State ex rel. Topeka Police Dept. v. $895 U.S. Currency,281 Kan. 819, 827 (2006).
[25] But see 2008 S.B. No. 642. The bill regards the Kansas Unified School District Alternative Project Delivery Building Construction Procurement Act, which would authorize school districts to utilize the construction manager at risk method. Selection of the construction manager at risk would not be subject to the bidding requirements of K.S.A. 2006 Supp. 72-6760, but rather would be subject to the specific procedure set out in the Act.
[26] Ritchie Paving, Inc. v. City of Deerfield, 275 Kan. 631, 633
(2003); Williams v. City of Topeka, 85 Kan. 857, Syl. ¶ 1 (1911).
[27] State Bd. of Nursing v. Ruebke, 259 Kan. 599, 622-23 (1996).
[28] L. 1963, ch. 393, § 27.
[29] L. 1982, ch. 297, § 1.
[30] Senate Committee on Education, Minutes, January 27, 1982; House Committee on Education, Minutes, March 15, 1982.
[31] Hope's Architectural Products v. Lundy's Construction, 762 F.Supp. 1430, 1433 (D. Kan. 1991).
[32] Vanguard Products Corp. v. American States Ins. Co.,19 Kan.App.2d 63, 65 (1993); K.S.A. 60-1111(b).
[33] Wichita Sheet Metal Supply, Inc. v. Dahlstrom Ferrell Constr.Co., 246 Kan. 577, 564 (1990).
[34] Attorney General Opinion No. 96-36.
[35] In re Adoption of X.J.A., 284 Kan. 853, 879 (2007).
[36] K.S.A. 60-1111 (emphasis added).